ABRAMS, Respondent, vs. MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Appellant.

SAME, Appellant, vs. SAME, Respondent.

*March 23 — April 10, 1894.*

*Carriers: Live stock: Liability for negligence: Exemption or limitation by contract.*

1. A common carrier cannot, by a stipulation in a contract for the transportation of live stock, exempt itself from liability for injuries caused by its negligence or the negligence of its agents or employees.

2. In the absence of any agreed valuation of the stock in the contract, the carrier cannot limit to a certain sum its liability for injuries caused by the negligence of itself or its employees.

APPEALS from the Circuit Court for *Winnebago* County. On March 31, 1890, the plaintiff and one Richard Abrams were each the owners of four several horses at Harrison, Lincoln county, Wis., and shipped the same upon the cars

of the defendant from that station to Oshkosh. At the time of said shipment the agent of the plaintiff and said Richard Abrams entered into a written agreement respecting said shipment, of which the following is a copy, to wit:

"Harrison Station, March 31, 1890.

"Received from Joe Phelan, consigned to G. W. Pratt, Oshkosh, live stock described as follows, viz.: Horses in *M., L. S. & W.* car number 3,204, to be delivered at Oshkosh at the following rates, viz. tariff. In consideration of which, and of other valuable considerations, *it is hereby mutually agreed* between the *Milwaukee, Lake Shore & Western Railway Company* and the shipper of said live stock that the said company *shall not be liable for any loss or damage or injury to said live stock from any cause whatever,* whether by *negligence of its agents or employees or otherwise,* except such as may result from a collision of the train, or from cars being thrown from the track, in course of transportation; and it is further agreed that *the owner shall load, unload, feed, water, and take care of* said stock *at his own expense and risk,* and that *he assumes all risk of injury or damage* that the animals may in any way or manner or from any cause sustain, except as above provided. It is further agreed that *the liability of the company shall not, in any event, exceed one hundred dollars per head;* and that all persons passed free, to accompany and care for the stock, will assume all risk of personal injury from any cause whatever, whether by negligence of the agents or employees or otherwise.

"MILWAUKEE, LAKE SHORE & WESTERN R'Y CO.,

"By F. J. Gruber, Agent.

"Jos. PHELAN, Shipper.

"Agents will note instructions on back hereof."

Indorsements on back:

"M., L. S. & W. Ry. Co. Live Stock Contract.

"From Harrison to Oshkosh. Nos. of cars, *M., L. S. & W.* 3,204.

"I hereby certify that I am actually in charge of the live stock described within, and, in consideration that the *M., L. S. & W. R'y Co.* transports me free on the same train with the stock, I hereby assume all risk of personal injury from any cause whatever.          Robt. Lyness."

"I hereby certify that the above named are actually in ·charge of the live stock described within, and are entitled to pass on same train with it, under conditions named.

"F. J. Gruber, Agent, Harrison Station."

On November 24, 1891, the plaintiff commenced this action, alleging, in effect, the incorporation and organization of the defendant, the making of such contract of shipment, and the payment of $15 in consideration thereof; that the ·defendant delayed the transportation of said horses for a period of five hours or more after arriving at Antigo, and that the defendant so negligently and carelessly conducted and mismanaged in respect to the carrying of said horses and its duty and calling as a common carrier that it neglected and failed to give the plaintiff's servant in charge of said horses an opportunity to unload and feed the same, though requested so to do by said servant, and by reason thereof the said horses suffered for want of care and food, and became weak and faint; that said eight horses were transported in the same car with eight other horses; that ·by reason of their faintness and weakness, so caused, they were unable to retain their standing or proper posture in said car, and were forced into cramped positions and attitudes, and thrown down, so as to necessitate their being twice unloaded during the transportation,— once at Elmhurst, and once at Eland Junction, on the line of the defendant's road; that when so unloaded the defendant refused, failed, and neglected to give said servant in charge an opportunity to feed and properly care for said horses while they were so unloaded, but immediately caused the same ·to be reloaded; that, in consequence of the defendant's

careless and negligent conduct, three of said horses became sick and diseased and died of the effects of said exposure and said want of care and protection; that two of them were the property of the said Richard Abrams, and the other the property of this plaintiff; that the loss of said horses was to the damage of the plaintiff and the said Richard Abrams in the sum of $650; that afterwards, and before the commencement of this action, the said Richard Abrams, for a valuable consideration, duly sold and assigned to the plaintiff all his interest, claim, and demand against the defendant on account of the loss and death of said horses as aforesaid, and that the plaintiff is now the sole owner thereof. Judgment is demanded in the sum of $700, with costs and disbursements. The defendant answered by way of denials and admissions, and justified under said written contract.

At the close of the trial the jury returned a special verdict to the effect (1) that the loss or death of the plaintiff's said horses was caused by the negligence of the defendant or its employees; (2) that the value of each of two of said horses was $200 each, and of the other was $250. The court thereupon denied the motion of the defendant to set aside the verdict and grant a new trial, and denied the motion of the plaintiff for judgment upon and in accordance with the special verdict for the whole amount thereof, with costs; but ordered judgment upon the special verdict to be entered in favor of the plaintiff and against the defendant in the sum of $300 and costs and interest from the commencement of this suit. Judgment was entered accordingly, from which both parties appeal.

For the plaintiff there were briefs by *Felker, Stewart & Felker*, and oral argument by *F. C. Stewart.*

For the defendant company there were briefs by *Alfred L. Cary* and *Bradley G. Schley*, and oral argument by *Mr. Cary.*

CASSODAY, J. The jury found as a matter of fact, in effect, that the horses came to their death by reason of the negligence of the defendant. The horses were transported on the defendant's car for a distance of about 140 miles, and the time occupied by such transportation was about thirty-four hours. During that time the horses had no food nor drink. According to the testimony of those in charge of the horses, the defendant refused to give them any opportunity to take the horses from the car and give them food and drink, though repeatedly requested so to do; that this was particularly so at Antigo, where the car remained about eight hours; that it was also true at other places; and that there were eight other horses in the same car, and it was impracticable to give them food and water without removing them from the car. It appears that the train reached Oshkosh about six hours behind schedule time. There is expert testimony to the effect that such exposure of the horses without food or drink probably induced the disease which caused their death. We must assume, therefore, that the evidence supports the verdict to the effect that the horses came to their death by reason of the negligence of the defendant.

The defense relied upon is that by the written contract of shipment contained in the foregoing statement the defendant was expressly exempted from all liability by reason of such negligence, and that the plaintiff thereby assumed all risk of such injury or damage. Such is, indeed, the contract, if we are to give literal effect to its language. In *Betts v. Farmers' L. & T. Co* 21 Wis. 80, it was said by DIXON, C. J., in speaking of the transportation of live stock, that, "as to this species of property, we think it competent for the carrier to contract that the owner shall assume all risk of damage or injury from whatever cause happening in the course of transportation." This proposition covers more ground than the point actually decided in that case,

but seems to be sustained by the earlier English cases, while the later English cases seem to hold a contrary doctrine. See *Richardson v. C. & N. W. R. Co.* 61 Wis. 598, 599, and cases there cited. In *Morrison v. Phillips & C. Const. Co.* 44 Wis. 410, the only question involved, as stated by the present chief justice, was whether the company "was guilty of any negligence, carelessness, or fault which caused or produced the injury to the property of the plaintiff," and he concluded by saying, "From all that appears in the evidence, it was a mere accident, and unaccountable." *Richardson v. C. & N. W. R. Co., supra,* was an action to recover damages for delay in furnishing cars for the transportation of hogs. It was there pretty strongly intimated, if not directly held, that a railway company was not under the same obligations to furnish cars for and receive, safely carry, and store live stock, as other ordinary inanimate freight, but that it might, to at least a certain extent, exact conditions upon such receipt, and limitations upon such liability. In that case the complaint was held bad on demurrer for failure to allege the customary terms or conditions and restrictions upon which the company was in the habit of receiving and shipping such live stock, or the requisite facts to create a liability under sec. 1798, R. S. In *Ayres v. C. & N. W. R. Co.* 71 Wis. 372, it was held that "a railroad company engaged in the business of transporting live stock, and accustomed to furnish suitable cars therefor upon reasonable notice whenever it can do so, and which holds itself out to the public as such carrier for hire upon the terms and conditions prescribed in a special written contract with shippers, is a common carrier of live stock, with such restrictions and limitations of its common-law duties and liabilities as arise from the instincts, habits, propensities, wants, necessities, vices, or locomotion of such animals under the contracts of carriage." Within the rule thus suggested it was competent for this railroad company

Abrams vs. Milwaukee, Lake Shore & Western R. Co.

to stipulate with the owners of live stock that they should load, unload, feed, water, and take care of the stock at their own expense. The contract in question contains such a stipulation. But the stipulation itself raised an implied obligation on the part of the defendant to furnish to such owners the requisite opportunities for so loading, unloading, feeding, watering, and taking care of such stock. This action is to recover damages for wilfully refusing or negligently omitting to perform that duty.

The question recurs whether the defendant, by the contract of shipment, could lawfully exempt itself from liability for such negligence. This court has held that a common carrier of persons or property cannot by any agreement, however plain and explicit, wholly relieve itself from liability for injury resulting from its gross negligence or fraud. *Black v. Goodrich Transp. Co.* 55 Wis. 319; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 455. The same rule has been applied to a passenger carried gratuitously by a railroad upon a pass containing such a stipulation. *Annas v. M. & N. R. Co.* 67 Wis. 46. So this court has repeatedly held that a telegraph company cannot, by such stipulation, relieve itself from liability for damages happening by the want of ordinary care of itself or servants. *Thompson v. W. U. Tel. Co.* 64 Wis. 531; *Hibbard v. W. U. Tel. Co.* 33 Wis. 558; *Candee v. W. U. Tel. Co.* 34 Wis. 471. In the leading case of *Railroad Co. v. Lockwood*, 17 Wall. 357, 384, Mr. Justice BRADLEY discussed the subject with his accustomed learning and ability, and he and the whole court reached the conclusions: " (1) That a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just and reasonable in the eye of the law; (2) that it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants; (3) that these rules apply

Abrams vs. Milwaukee, Lake Shore & Western R. Co.

both to common carriers of goods and common carriers of passengers for hire, and with special force to the latter; (4) that a drover traveling on a pass, such as was given in this case, for the purpose of taking care of his stock on the train, is a passenger for hire." In reaching such conclusions Mr. Justice Bradley said: "In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties,— an object essential to the welfare of every civilized community. Hence the common-law rule which charged the common carrier as an insurer. Why charge him as such? Plainly for the purpose of raising the most stringent motive for the exercise of carefulness and fidelity in his trust. . . . It is obvious, therefore, that if a carrier stipulate not to be bound to the exercise of care and diligence, but to be at liberty to indulge in the contrary, he seeks to put off the *essential duties* of his employment; and to assert that he may do so seems almost a contradiction of terms." 17 Wall. 377, 378. Accordingly, it was there held, in effect, that the railroad company could not abdicate the essential duties of its employment of carefulness and fidelity as such common carrier.

The doctrine of that case has frequently been sanctioned by the same court. *Liverpool, etc. Steam Co. v. Phenix Ins. Co.* 129 U. S. 397, 441, 442, and cases there cited. There are numerous adjudications in the state courts to the same effect. *Grogan v. Adams Exp. Co.* 114 Pa. St. 523; *Buck v. Penn. R. Co.* 150 Pa. St. 170; *Lindsley v. C., M. & St. P. R. Co.* 36 Minn. 539; *Hull v. C., M. & St. P. R. Co.* 41 Minn. 510; *Boehl v. C., M. & St. P. R. Co.* 44 Minn. 191; *Canfield v. B. & O. R. Co.* 93 N. Y. 532; *C., R. I. & P. R. Co. v. Witty*, 32 Neb. 275; *Railway Co. v. Wynn*, 88 Tenn. 320; *McFadden v. Mo. Pac. R. Co.* 92 Mo. 343; *Galt v. Adams Exp. Co.* 48 Am. Rep. 742. Some of these cases

involved the validity of such stipulation for exemption from liability in contracts for the carriage of live stock, and, while they indicate that such contract for exemption might be made as against injuries resulting from the inherent nature or propensities of the animals without fault of the carrier, yet they all hold that the carrier cannot by contract exempt itself from liability for the negligence of itself or its employees. Some of the cases cited go so far as to hold that where there is damage to the property so transported, the burden is on the carrier to show that it was free from negligence.

In *Annas v. M. & N. R. Co.*, *supra*, Mr. Justice TAYLOR reviewed the authorities, and in effect said that this court was committed to the rules of law held in *Railroad Co. v. Lockwood*, 17 Wall. 357. 67 Wis. 55. The doctrine of that case seems to be in harmony with what was said in *Richardson v. C. & N. W. R. Co.* 61 Wis. 596, and *Ayres v. C. & N. W. R. Co.* 71 Wis. 372. Since those cases arose, and since the first was decided by this court, ch. 487, Laws of 1887, has been enacted, expressly requiring every railroad corporation operating a road within this state to receive and carry live stock during eight months of the year, including March and April, and prescribing the conditions upon which such stock is to be so carried; and, among other things, declaring that "said railroad company transporting such cars of live stock shall *feed and water* such stock as shall be unloaded under the provisions of this act at the expense of the railroad company, where such stock shall be detained by them for a longer period than six hours." S. & B. Ann. Stats. sec. 1799*a*.

There are numerous decisions by courts of high authority in conflict with the cases cited, but we must hold, what we regard as the better doctrine, that, in so far as the contract in question attempted to exempt the company from liability by reason of its own negligence or the negligence

of its agents or employees, it is contrary to public policy and void. This really disposes of all the questions raised upon the defendant's appeal calling for consideration. There are exceptions to the admission of certain testimony as to the usual stop at Antigo, the usual time occupied for such transportation, the rules and orders of the company in respect to the shipping of live stock; but such testimony related to matters respecting which there was substantially no dispute, and under the admitted facts in the case they were of but very little significance. As often stated, this court cannot reverse for errors which do not affect the substantial rights of the adverse party. R. S. sec. 2829.

The court refused to allow the plaintiff to take judgment for the value of the horses as found by the verdict. In doing so the court gave effect to the clause of the contract wherein it was agreed that the liability of the company should not in any event exceed $100 per head. It will be observed that that amount is not named as the value of each horse, and the contract contains no stipulation nor agreement as to the value of the horses or any of them. In *Hart v. Penn. R. Co.* 112 U. S. 331, the plaintiff's recovery was limited to his "agreed valuation" in the contract. The same was true in *Graves v. L. S. & M. S. R. Co.* 137 Mass. 33, where it was held "that the shipper was *estopped* to claim more than the agreed valuation of the goods." To the same effect: *Hill v. B., H. T. & W. R. Co.* 144 Mass. 286; *Brown v. Cunard S. S. Co.* 147 Mass. 58; *Alair v. N. P. R. Co.* 53 Minn. 160. But where, as here, there is an absence of any agreed valuation in the contract, and the limitation is merely as to the amount of recovery for damages caused by the defendant's negligence, the case comes within the general rule to the effect that the company cannot contract for exemption, either in whole or in part, from liability for the negligence of itself or its employees. *Ibid.;*

Abrams vs. Milwaukee, Lake Shore & Western R. Co.

*Boehl v. C., M. & St. P. R. Co.* 44 Minn. 191; *McFadden v. Mo. Pac. R. Co.* 92 Mo. 344; *Weiller v. Penn. R. Co.* 134 Pa. St. 310; *Ashendon v. L., B. & S. C. R. Co.* L. R. 5 Exch. Div. 190, 31 Moak, Eng. Rep. 644; *Dickson v. Great Northern R. Co.* L. R. 18 Q. B. Div. 176. This is in harmony with the rule held in *Black v. Goodrich Transp. Co.* 55 Wis. 319.

It is to be remembered that the shipper and the railroad company do not contract upon equal terms. Practically the shipper is bound to submit to whatever conditions are exacted by the carrier. To be lawful, such conditions must be reasonable. A contract relieving a carrier wholly or partially from liability for damage caused by its own negligence is unreasonable. We must hold that the plaintiff was entitled to judgment for the amount of his verdict. The result is that the exceptions of the defendant are overruled, and the judgment is affirmed so far as involved in its appeal.

*By the Court.*— On the defendant's appeal the judgment is affirmed; on the plaintiff's appeal the judgment is reversed, and the cause is remanded with direction to render judgment in favor of the plaintiff and against the defendant for the full amount of the verdict as damages.

As to carrier's power to limit amount of liability in cases of negligence, see note to *Ballou v. Earle* (R. I.) in 14 L. R. A. 433.— Rep.