LOESER, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*November 27 — December 15, 1896.*

*Railroads: Carriers of live stock: Injury while unloading: Negligence: Contract exempting from liability and limiting value: Public policy: Court and jury.*

1. In an action against a railroad company for injuries received by one of a car load of horses which were being unloaded in defendant's yard for the purpose of feeding and watering them, the question whether it was negligence for the defendant's employees to drive the horses loose into the pen instead of leading them separately so as to have them at all times under control, is *held* to have been for the jury.

2. A provision in the contract of carriage in such a case that " the company shall not be liable for the acts of the animals themselves,

or to each other, . . . or from loading or unloading them," did not exempt the company from liability for the consequences of its own negligence or the negligence of its servants, but only from liability for such injuries as might happen to the horses by reason of the natural propensities of the animals themselves, or by the peculiar hazards of loading and unloading them.

3. An express provision in a contract of carriage limiting the carrier's liability for any loss or damage for which it may be responsible to an agreed valuation is not invalid as against public policy, even when the loss or damage is occasioned by the negligence of the carrier.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Action for the value of a horse. The plaintiff delivered to the defendant seventeen horses, to be carried from Darlington, Wisconsin, to Chicago, Illinois. They were to be unloaded, fed, and watered, *en route*, at the defendant's yards in Milwaukee. They arrived at Milwaukee in the nighttime. They were taken from the car, and driven in a body, through a lane, into a pen, where the defendant's employees at once commenced tying them. Before all were tied, two of them began to kick. One of these dislocated his leg at the hock, as the jury found, by his own act of kicking, and it became necessary to kill him. The contract on which the horses were carried contained these provisions: "The company shall not be liable for the acts of the animals themselves, or to each other, such as biting, kicking, goring, and smothering, . . . or from loading or unloading them," and "any loss or damage for which it may be responsible shall not exceed the following agreed valuation: If horses or mules, $100 each."

There was a special verdict as follows: "(1) Did the horse in question suffer an injury which made it necessary to kill it, by reason of the negligence of the servants of the defendant corporation? Answer. Yes. (2) What was the value of the horse, immediately before it was injured?

Answer. Two hundred and fifty ($250) dollars. (3) Did the defendant's conductor say to the plaintiff, before the train reached Milton, that his train was late, and that he was afraid the train for Milwaukee would not wait for his train? Answer. Yes. (4) Was the horse injured by or through the kicking of the horse, or the kicking of another horse? Answer. By the kick of the horse itself. (5) If you answer the third question 'Yes,' did the plaintiff act as a man of ordinary care and prudence would have acted, in omitting to ascertain whether the horse would or would not leave Milton Junction without delay? Answer. Yes. (6) Was the plaintiff guilty of any negligence which caused him to be left, or in being left, at Milton, on the night of July 2, 1892, so that he did not get to Milwaukee with the car load of horses? Answer. No. (7) Do you find for the plaintiff or for the defendant? Answer. For the plaintiff." On this verdict the court rendered judgment for the defendant. The plaintiff appeals.

For the appellant there was a brief by *Granger & Son,* and oral argument by *S. W. Granger.*

*C. H. Van Alstine,* for the respondent, argued that, by its contract with the plaintiff, defendant was exempt from liability for any injury caused by its own negligence, otherwise the exemption clause could have no effect. *Cragin v. N. Y. C. R. Co.* 51 N. Y. 61; *Betts v. Farmers' L. & T. Co.* 21 Wis. 80; *Richardson v. C. & N W. R. Co.* 61 id. 596, 600.

NEWMAN, J. It was a question for the jury whether it was negligence to drive the horses loose into the pen, instead of leading them separately, so as to have them at all times under safe control. The question seems to have been fairly submitted. The verdict is conclusive of the liability of the defendant, unless it is excepted from liability by that provision of the contract which declares that "the company shall not be liable for the acts of the animals themselves, or to each other, . . . or from loading or unloading them."

But this should not be construed into a provision to exempt the company from the consequences of its own negligence or the negligence of its servants. Such provisions are not favored. But this was designed rather to declare the exemption of the company from liability for such injuries as might happen to the horses by reason of the natural propensities of the animals themselves, or by the peculiar hazards of loading and unloading them, and was put into the contract from abundance of caution in that respect. It was to provide against liability for such injuries as were really beyond the control of the carrier, by reason of their cause being the natural propensity or temper of the animal itself. It contemplates such injuries only as might happen during the carriage proper, or while being loaded or unloaded, and not such as might happen by reason of the natural propensities of the animals themselves while in the company's yard for rest or food. Ordinary care might well require that, at such a time, vigilance be used to guard against and restrain the natural propensities of the animals themselves, in order to prevent injuries. Express provisions in the contract of carriage that the carrier assumes liability only to the extent of an agreed valuation are upheld, as not being against public policy, even in case the loss or damage be through the negligence of the carrier. The carrier must respond for its negligence up to the agreed value. *Black v. Goodrich Transp. Co.* 55 Wis. 319; *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485; *Hart v. Pennsylvania R. Co.* 112 U. S. 331. This contract of carriage contained such a provision. In this respect the contract is identical with the contract in *Hart v. Pennsylvania R. Co., supra,* which was held in that case to limit the recovery. The plaintiff should have had judgment on the verdict for the amount of the agreed valuation.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment on the verdict in favor of the plaintiff for $100.