LAMB, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*October 14— November 1, 1898.*

*Carriers: Limitation of liability: Negligence: Court and jury: Evidence.*

1. Notwithstanding stipulations in a carrier's contract attempting to exempt it from liability for the consequences of its own negligence, the shipper may recover for a loss by showing that the exercise of reasonable care and skill on the part of the carrier would have prevented it.

2. In an action against a second or connecting carrier for damage to and loss of berries shipped in hot weather to be carried by the first carrier to Chicago, and by the defendant to La Crosse, at double rates, under a contract which exempted the carriers from liability for loss through heat or decay, it appeared that the berries were shipped in good condition, in a car properly iced so as to require no further attention until the following afternoon; that notice thereof

Lamb vs. The Chicago, Milwaukee & St. Paul R. Co.

was given to the defendant; that they were delivered to the defendant the next day at 1:45 p. m., at a point seven miles from its ice house, and were permitted to remain there on the track until evening before the ice boxes, then two thirds empty, were refilled; and that when delivered to the plaintiff a large portion of the berries were damaged and worthless. *Held* that, although there was no direct evidence as to the condition of the berries when delivered to the defendant; yet, as it had the means of knowing, which the plaintiff had not, the question of its liability by reason of its delay in icing and transportation was properly one for the jury.

3. The admission in evidence in such action of a telegram from the defendant's agent at the station where the berries were received to its claim agent, stating the apparent good condition of the berries when the ice was supplied, was not harmful to the defendant.

Appeal from a judgment of the circuit court for La Crosse county: O. B. Wyman, Circuit Judge. *Affirmed.*.

This action was brought to recover damages to a car load of strawberries shipped from South Haven, Michigan, to La Crosse, Wisconsin, alleged to have resulted from the neglect of defendant in delaying the car and failing to ice it while in its possession, in the city of Chicago. On Saturday, June 6, 1896, one Delamere, a fruit dealer, shipped from South Haven a car load of strawberries consigned to plaintiff at La Crosse. The car was routed by way of the Michigan Central to Chicago, and thence by way of defendant's road to La Crosse. It left South Haven at 5:10 p. m., and in the usual course of business should have been delivered to defendant at Chicago at 7 or 8 o'clock Sunday morning, but was not in fact delivered until 1:45 of that day. Cars arriving on the Michigan Central, consigned to points on the defendant's line, are delivered to it at the Union Stock Yards. Its regular freight trains are made up and sent out from its Western Avenue yard, about seven miles from the Union Stock Yards. A portion of the Union Stock Yards, known as the Ashland Avenue yard, is used by the defendant, and is the place where the Michigan Central and defendant

Lamb vs. The Chicago, Milwaukee & St. Paul R. Co.

interchange cars, the transfer being made by defendant's switch trains. On week days these transfer trains make several trips, but on Sunday it was customary to make but two round trips, one in the forenoon and one in the afternoon; sometimes more. Defendant's ice houses and facilities for icing cars were at the Western Avenue yard. On Sunday, defendant had a fast freight, leaving Chicago at 1 p. m., for La Crosse and other northwestern points, but owing to the delay mentioned the car was not received by defendant until after this train had departed. Within a very short time after its arrival, defendant's agent was notified, and the car was turned over to defendant at 1:45 p. m. It remained on the track at the Union Stock Yards until about 6 o'clock, when it was taken to the Western Avenue yard, arriving at 7:20. It was then inspected, and finally iced between 8 and 9 o'clock. The ice boxes were then found to be about one third full. The car was forwarded on a train leaving Chicago at 11 p. m., and was delivered to plaintiff at La Crosse at 7 p. m., Monday. It was then found that a large portion of the berries were damaged and worthless. The evidence shows that the berries were fresh when shipped, and that the ice box was full of ice when the car started, and sufficient to have kept the berries in good condition until toward night the following day. The weather was warm, and the defendant knew the car contained berries. The berries were shipped under a contract which exempted the carrier from liability for damage thereto arising from "changes in weather, heat, frost, wet, or decay." The freight rates charged were about double that charged for other kinds of freight. The evidence further shows that defendant had notice that the berries had been shipped, and was requested to have the car heavily iced, and rushed through. The case was tried before a jury, who returned a verdict for the plaintiff. From the judgment entered thereon this appeal is taken.

For the appellant there was a brief by *Losey & Woodward*,

attorneys, and *H. H. Field*, of counsel, and oral argument by *Mr. Field*. They argued that the damage and loss arose from a natural cause, within the exception of the contract, and the carrier might rely upon such exception and need not show affirmatively the absence of negligence on its part. *Schaller v. C. & N. W. R. Co.* 97 Wis. 31; Hutchinson, Carriers (2d ed.), § 768*a;* 4 Elliott, R. R. § 1516; *Swetland v. B. & A. R. Co.* 102 Mass. 276; *Hussey v. The Saragossa*, 3 Wood, 380; *Pennsylvania R. Co. v. Raiordon*, 119 Pa. St. 577.

For the respondent there was a brief by *Higbee & Bunge*, and oral argument by *E. C. Higbee*.

BARDEEN, J. The most important ground of contention in this case is that the court ought to have taken the case from the jury and directed a verdict for the defendant. The berries were shipped under a contract that the carrier should not be liable for any damage to the property by causes beyond its control, or by changes in the weather, heat, or decay. Stipulations limiting the common-law liability of the carrier have been recognized and upheld in many cases in this court. See cases cited in *Schaller v. C. & N. W. R. Co.* 97 Wis. 31. But the uniform tenor of the decisions is that such stipulations are invalid, in so far as they attempt to exempt the carrier from the consequences of its own negligence (*Black v. Goodrich Transp. Co.* 55 Wis. 319; *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485; *Loeser v. C., M. & St. P. R. Co.* 94 Wis. 571); that is to say, the shipper, notwithstanding such conditions, may recover by showing that the exercise of reasonable care and skill on the part of the carrier would have avoided the loss.

It is insisted by defendant that no evidence was offered to show what condition the berries were in when received by it, and therefore the case should have been taken from the jury. The evidence is conclusive that the berries were in good condition when shipped from South Haven; that they were loaded into a cool car, which had been thoroughly

iced, and that berries so cared for would not need further attention, even in the hottest weather, until the following afternoon. It also appears that defendant's agents knew that the Michigan Central was the only road out of South Haven leading directly to Chicago; that they had due and timely notice that the car had been shipped; that they had notice of the character of the freight very soon after the car was received; that in the usual course of business the car should have been received about 7 or 8 o'clock in the morning; that it was in fact received by defendant at 1:45 in the afternoon, and was allowed to remain on the track at the Union Stock Yards until about 6 o'clock; that it was then taken to the Western Avenue yard, and inspected; and that it was about 9, or half past, when they finished icing the car. It further appears that on Sunday the defendant ran two, and sometimes three, transfer trains between the Union Stock Yards and Western Avenue; that the transfer would ordinarily be made more speedily on Sunday than week days; that it was not usual to permit perishable freight to remain upon the track at the Union Stock Yards, but they would notify the yard master, and he would send an engine for the car; that this was frequently done without waiting for any regular train to start out from Western Avenue; that defendant's facilities for icing cars were at its Western Avenue yards; that the transfer was usually made in from forty-five minutes to an hour and a quarter; that when this car was inspected the boxes were found about one third full of ice; that when the ice is low refrigeration is less and the fruit near the top of the car is liable to damage; that defendants solicited this kind of business from plaintiff, and offered, as an inducement to his shipping over their line, if he would give notice of intended shipments, steps would be taken to trace the car by wire, and see that it was promptly handled and taken care of; and that the freight rates were more than double the rate charged for apples.

Considering the time of the year, the character of the

Lamb vs. The Chicago, Milwaukee & St. Paul R. Co.

freight, the rate charged, and all the attendant circum-
stances, it is quite evident that the defendant became charged
with a considerable degree of vigilance and diligence in the
performance of its duties. The defendant does not deny its
duty in this respect, but sharply insists that there was no
evidence to go to the jury on the question of its negligence.
It is true that plaintiff did not produce any direct proof of
the condition of the berries at the time they were received
by the defendant. But it did show that nearly all of the
berries had been picked on the day of shipment; that they
were in good condition when loaded into a cool, well-iced
car; and that the ice in the car was sufficient to preserve
them until some little time after they were received by de-
fendant. From the very nature of the case, it was impos-
sible for plaintiff to go further. The car was under seal in
transit. It was impossible for him to have made an exam-
ination of it at any time before it was received by him at
La Crosse. We think the evidence was sufficient, *prima*
*facie*, to require a submission of the case to the jury, and,
in absence of any showing by the defendant as to their con-
dition, they would have a right to find as a fact that they
were in good condition at that time. The evidence on that
point would be peculiarly within the knowledge of the de-
fendant. It had the possession of the car, and an oppor-
tunity to, and did, inspect it. It had means of information
impossible to the plaintiff, and to say that he must make
affirmative and positive proof of the condition of the berries
at that time is to say that he is without remedy in cases of
this kind. He had made proof of facts and circumstances
which, if true, gave rise to a legitimate and proper inference
that the berries were in the same condition when received
by defendant that they were when shipped. This was really
all the proof the nature of the case permitted to the plaint-
iff, and enough to shift the burden upon the defendant as to
this particular fact. *Laughlin v. C. & N. W. R. Co.* 28 Wis.

204; *Beard & Sons v. I. C. R. Co.* 7 L. R. A. 286, 79 Iowa, 815; *Leo v. St. P., M. & M. R. Co.* 30 Minn. 438; *Brintnall v. S. & W. R. Co.* 32 Vt. 665; *Dixon v. R. & D. R. Co.* 74 N. C. 538; 4 Elliott, R. R. § 1450.

But it is said the evidence shows that the loss occurred from the peril expressly stipulated against,— that of heat and decay,— and that under the rule announced in *Schaller v. C. & N. W. R. Co.* 97 Wis. 31, the burden of proving negligence was upon the plaintiff. Grant this to be true. We hold that under the facts as stated there was certainly evidence in the case that warranted the submission to the jury. Defendant received the car at 1:45, and permitted it to stay upon the track in the stock yards until 6 o'clock, and did not ice it until between 8 and 9. When inspected, the ice was found to be about two thirds gone. The necessity of having the ice box filled for complete refrigeration was admitted, or not controverted. Can we say, as a matter of law, that the defendant discharged its full measure of duty under the circumstances? We think not. It is not a case where the inferences to be drawn from the proof are all one way, or so conclusive as to leave the matter beyond serious contention. The case was peculiarly one for the jury, and, if fairly submitted, their conclusion ought not to be disturbed. Notwithstanding the criticism of the counsel, we think the case was submitted to the jury under instructions that were most favorable to the defendant. The delay in transferring the car and filling it with ice was certainly a proper matter to submit to the jury under the testimony.

The reception in evidence of the telegram from the defendant's agent Holmes to its claim agent, to the effect that when the car was inspected it was one third full of ice, that 3,000 pounds of ice were put in, and that the "berries appeared in good order near doorway," was more harmful to the plaintiff than defendant. The evidence shows that the car was inspected shortly after 7 o'clock, and the fact that

the berries then appeared in good order was certainly not harmful to the defendant's case.

The other objections are not of sufficient importance to require special mention. On the whole case, we see no reason for disturbing the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.