Densmore Commission Co. vs. Duluth, South Shore & Atlantic Railway.

---

DENSMORE COMMISSION COMPANY, Appellant, vs. DULUTH, SOUTH SHORE & ATLANTIC RAILWAY, Respondent.

*December 19, 1898 — January 10, 1899.*

| 101 | 563 |
| 110 | 612 |
| 101 | 563 |
| 55 LRA | 184 |

*Carriers of fruit: Negligence: Assuming risk.*

One who had been accustomed to ship fruit shipped two car loads of apples, in the month of October, in refrigerator cars, under an agreement that the carrier should not be liable for loss or damage by

Densmore Commission Co. vs. Duluth, South Shore & Atlantic Railway.

causes beyond its control or by heat, etc. The car had side doors which were air-tight when closed, and ice boxes open at the top, which could not be kept open when in transit. Before the cars were turned over to the carrier the shipper kept them ventilated by keeping the doors open, but he did not stipulate to have the cars ventilated at stations on the way. *Held*, that the shipper must be deemed to have assumed the risk, and could not recover for injury to the apples caused by excessive heat resulting from want of ventilation.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

The cause was submitted for the appellant on the briefs of *H. V. Gard.*

For the respondent there was a brief by *Catlin, Butler & Lyons,* and oral argument by *Thos. E. Lyons.*

CASSODAY, C. J.    This action was brought to recover damages to two car loads of apples shipped by the plaintiff from Vermontville, Michigan, October 30, 1896, over the Michigan Central road, to St. Ignace, Michigan, where the same were received by the defendant November 3, 1896, and thence over the defendant's road to West Superior, claimed to have been damaged while in transit by reason of lack of ventilation. The defendant answered by way of admissions and denials, and alleged, in effect, that the apples were loaded upon the cars by and under the direction of an agent and officer of the plaintiff; that the manner of loading and ventilating the cars was looked after and controlled by him; that, if the apples were injured or damaged during the shipment, the same was caused by and resulted from the carelessness and negligence of the plaintiff. At the close of the trial, the jury, under the direction of the court, returned a verdict in favor of the defendant. From the judgment entered thereon accordingly the plaintiff brings this appeal.

It appears and is undisputed, that the witness Joseph M. Densmore, the treasurer of the plaintiff, on its behalf, super-

intended the loading of the apples on the cars at Vermontville, October 28, 29, and 30, 1896; that they were turned over to the Michigan Central Railway Company for shipment, October 30 and 31, 1896; that there were five bins in each car; that the bottoms of the cars were covered with straw; that the quality of the apples when so loaded in the cars was good,— first class; that, upon so turning the loaded cars of apples over to the Michigan Central Railway Company, the witness named, on behalf of the plaintiff, signed a shipping order to the effect that it was mutually agreed as to each carrier of all or any of the property over all or any portion of the route to destination, and as to each party at any time interested in all or any of the property, that every service to be performed thereunder should be " subject to all the conditions, whether printed or written," therein contained, both on the face and on the back thereof, and which was thereby agreed to by the shipper, and by him accepted for himself and his assigns as just and reasonable; that no carrier or party in possession of all or any of the property therein described should be liable for any loss thereof or damage thereto by causes beyond its control, or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet, or decay, and that no carrier should be liable for loss or damage not occurring on its own road or its portion of the through route, nor after the property should be ready for delivery to the next carrier or to the consignee; that the Michigan Central Railway Company furnished the cars in which the apples were shipped; that the witness named kept the cars ventilated while in his charge, before they were turned over to the railway company for shipment, by keeping the doors open; that he did not in any manner change the ventilator of either of the cars at any time; that, if any doors to the cars in question were left open, it would have afforded ventilation for the apples; that the condition of all the doors to the cars when the apples were turned over to

the railway company for shipment was that the outside doors on one side were closed, and on the other side they were left open; that he exercised no control over the cars, or either of them, after he turned them over to the railway company for shipment; that he did not ride on the train on which the apples were shipped to West Superior.

There was further evidence tending to prove that, when the apples reached West Superior, a considerable portion of them were decayed, by reason of the excessive heat; that the plaintiff received notice of the arrival of the cars at West Superior on the morning of November 6, 1896, and that such heat was caused by lack of ventilation during shipment; that the cars were constructed upon the usual plan of refrigerator cars, with ventilating doors on top on either end of the cars, which were subject to be opened in full or in part; that they also could have been ventilated by leaving the side doors slightly ajar and locked with a small chain; that the ventilators of these cars, when they arrived at West Superior, were closed tight; that, when the doors closed, the inner edges met, and formed an air-tight car; that the edges of these doors were cushioned to form a complete air-tight joint; that all the doors were closed tight; that, when both inside and outside doors and the ventilators were closed, no air could enter the cars, and, when they arrived at West Superior, no air could enter them, and the heat inside was up to, at least, 100°; that the apples were loaded in Hutchinson refrigerator cars; that these cars opened to take in and unload freight at the side; that the doors pulled out; that there were two doors that opened out,— two wings,— a swing door on each side, and they met in the middle; that both had a level joint and padding or backing, so that, when they were closed, they were air-tight; that both doors forced together so that, when the doors were partly open, they were practically air-tight; that there was an end ventilator to these cars, through the ice box on the top,— on the ends;

that these side doors were not used for ventilation at all; that they were never used for ventilation purposes on refrigerator cars; that it was not practicable to leave these cars open when goods were in transit; that these refrigerator cars had no other ventilators except the ice boxes; that the purpose of this ice box was to put ice into to keep the contents of the car cool; that there was such a thing as a ventilator car; that these cars were not ventilator cars; that there was no other device on them for ventilating except the ice box; that, when these cars were in transit, it was not feasible or practicable to keep either of the side doors open, because it would come in contact with other objects along the road, such as switch stands, etc.; that it would not be very safe for a trainman walking from the tops of the cars to keep this ice box open on top; that it would not be practicable; that the door was right close to the running board; that, at that season of the year, apples did not require any special attention from station agents or trainmen if put in refrigerator cars; that the purpose of putting them in refrigerator cars at that season of the year was to prevent them from being frozen; that there was no purpose of putting them in the refrigerator car on account of heat at that season of the year; that the temperature at St. Ignace, November 3, 1896, at 7 a. m., was 69° above zero; at 7 p. m. it was 47° above zero; that on the next day, November 4th, it was 68° above zero at 7 a. m., and 48° above zero at 7 p. m.; that the apples were received at St. Ignace November 3d, and shipped November 4th; that a refrigerator car is merely to give a cooling influence in the car, and reduce the temperature; that its primary purpose was to keep the car airtight, rather than ventilated,— to keep it at a certain temperature; that these cars had no ventilators on them; that when these cars were received from the Michigan Central Company, at St. Ignace, the side doors were sealed with ordinary leaden seals.

If the decay of the apples was by reason of any negligence on the part of the carrier, it may be presumed, as contended by the plaintiff, that such negligence occurred while the apples were in the custody of the defendant as the last carrier. *Laughlin v. C. & N. W. R. Co.* 28 Wis. 204; *Lamb v. C., M. & St. P. R. Co., ante,* p. 138. In the case last cited, the well-settled rule is recognized that stipulations limiting the common-law liability of the carrier are upheld, except in so far as they attempt to exempt the carrier from the consequences of its own negligence. *Id.; Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485; *Loeser v. C., M. & St. P. R. Co.* 94 Wis. 571; *Leonard v. Whitcomb,* 95 Wis. 648; *Schaller v. C. & N. W. R. Co.* 97 Wis. 31. Under the shipping order in evidence, the defendant could not be held liable, except by proving some negligence on its part. We fail to find any proof of such negligence. The cars containing such apples started from Vermontville, 350 miles from St. Ignace, and were received by the defendant at the latter place November 3d, and were shipped November 4th, and reached West Superior in time to notify the plaintiff of their arrival on the morning of November 6th. During the time the cars were at St. Ignace, the temperature was below 70°, and a part of the time below 50°. It was at a season of the year when cold, instead of heat, was to be anticipated. The refrigerator cars were, manifestly, selected by the plaintiff to keep the inside of the cars at a certain or uniform temperature during transit. The plaintiff claims to have kept the cars ventilated while they were at Vermontville, by keeping one or more of the side doors open. Those doors were constructed so as to open outward, and to be air-tight when closed. They were the only means of communicating fresh air to the apples. Obviously, it was impracticable to open any of such doors while the cars were in transit. Besides, such doors were sealed up, and designed to be so sealed up. This must have been known to the plaintiff, as an habitual

shipper. Such refrigerator cars were not ventilated cars, nor designed to be ventilated. True, each car had an ice box, open at the top, but it seems to have been impracticable to keep that open while in transit. Besides, the plaintiff accepted the cars, loaded the apples, and signed the shipping order mentioned, and must be deemed to have done so with full knowledge of the kind, the construction, and the condition of the cars, the season of the year, and the probable time the apples would be in transit. If the plaintiff desired to have the apple department of the cars ventilated, by opening the side doors at stations from time to time during transit, then it should have had such stipulation inserted in the shipping order. If such had been the case, the cars probably would not have been sealed. If the apples decayed by reason of negligence, it was, manifestly, the negligence of the plaintiff. In other words, the plaintiff assumed the risk of shipping the apples in that kind of cars.

*By the Court.*— The judgment of the superior court of Douglas county is affirmed.

BARDEEN, J., took no part.