COURTEEN, Appellant, vs. KANAWHA DISPATCH and another, Respondents.

*May 3 — May 21, 1901.*

*Railroads: Common carriers: Contracts: Destruction of goods: Limitation on liability: "Awaiting further conveyance:" "Ready for delivery to the next carrier."*

1. Under the law of this state, a valid contract may be made limiting the common-law liability of a common carrier in any respect except exemption from the consequence of negligence.
2. A bill of lading provided that the consigned goods should be delivered to successive carriers; that no carrier should be liable for loss or damage after they were ready for delivery to the next carrier; and that no carrier should be liable in any other respect than as warehousemen while the goods were awaiting further conveyance. The goods were to be transported by rail and steamboat, and the railroad company transported them to a seaport with proper diligence. On arrival the goods were deposited in the railroad company's warehouse ready for shipment when the boat of the connecting carrier should arrive, it having no warehouse or dock. While the goods were awaiting shipment, they were, without negligence on defendant's part, destroyed by fire. *Held,* that the railroad company was not liable under the express stipulations of the bill of lading.
3. In such case the goods were "awaiting further conveyance" and "ready for delivery to the next carrier" within the meaning of the bill of lading.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Action to recover the value of two shipments of peas. The defendant the *Kanawha Dispatch* is a joint agency under which the other defendant and certain railroads make contracts for the carriage of freight over their connecting lines. The peas in question were shipped from Manitowoc, Wisconsin, on March 22 and March 26, 1897, under a contract with the first-named defendant, and were to be carried by rail to Newport News, Virginia, and thence by Chesapeake

& Ohio Steamship Company to Liverpool, England, for thirty-five cents per 100 pounds. The bill of lading recites that, in consideration of the rate of freight named, such service was to be performed under the following, among other conditions:

"With respect to the service until delivery at the port (A), first above mentioned, it is agreed that:

"1. No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto by cause beyond its control, or by floods, or by fire. . . .

"2. No carrier is bound to carry said property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit. . . .

"3. No carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee."

"11. No carrier shall be liable for delay, nor in any other respect than as warehousemen, while the said property awaits further conveyance; and, in case the whole or any part of the property specified herein be prevented by any cause from going from said port in the first steamer of the ocean line above stated leaving after the arrival of such property at said port, the carrier hereunder then in possession is at liberty to forward said property by succeeding steamer of said line, or, if deemed necessary, by any other steamer."

Both shipments arrived in Newport News on April 4th, and were placed in the railroad company's warehouse on pier No. 6, to be in readiness for shipment on steamship Shenandoah, due to sail from that port at a later date. The steamship company had no dock or pier, but used pier No. 6 for its purpose. The peas remained in the warehouse until April 27th, when the warehouse and dock were destroyed by fire. By the regular course of business, goods taken to be forwarded by water were received at this pier, and remained there until the ship came, when they were taken by the railroad company's employees to the side of the vessel, and delivered to

the stevedores who did the loading. A ship had sailed the day previous to the arrival of the peas, but none had arrived up to the time of the fire, although one did arrive on the afternoon of the fire. The steamship company had three boats, but had no specified time for sailing. The peas remained in the custody of the railroad company until they were destroyed. The plaintiff did not know the peas had not been forwarded, or of the course of business at the port. The facts above stated were shown on the trial without dispute. Both parties moved for the direction of a verdict. Defendant's motion was granted, and from a judgment dismissing the action the plaintiff has appealed.

*F. A. Geiger*, for the appellant, to the point that defendants are not entitled to the protection of clauses 3 or 11 of the bill of lading, making them liable only as warehousemen, cited *Railroad Co. v. Manufacturing Co.* 16 Wall. 318; *Texas & P. R. Co. v. Clayton*, 84 Fed. Rep. 305, 173 U. S. 354; *Conkey v. M. & St. P. R. Co.* 31 Wis. 627; *Lewis v. C. & O. R. Co.* 35 S. E. Rep. 908; 5 Am. & Eng. Ency. of Law (2d ed.), 263; *Goold v. Chapin*, 20 N. Y. 259; *Reiss v. T. & P. R. Co.* 98 Fed. Rep. 533, 99 Fed. Rep. 1006; *McKinney v. Jewett*, 90 N. Y. 267.

For the respondents there was a brief by *Winkler, Flanders, Smith Bottum & Vilas*, and oral argument by *F. C. Winkler.*

BARDEEN, J.    Under the law of this state, a valid contract may be made limiting the common-law liability of a common carrier in any respect except exemption from the consequence of negligence. *Schaller v. C. & N. W. R. Co.* 97 Wis. 31; *Lamb v. C., M. & St. P. R. Co.* 101 Wis. 138; *Densmore C. Co. v. D., S. S. & A. R. Co.* 101 Wis. 563. See *Morrison v. Phillips & C. C. Co.* 44 Wis. 405. The plaintiff contends, and the defendants admit, that it was the duty of the railway company to deliver the peas to the steamship company with

all reasonable promptness and dispatch, and for failure to do so an action would lie for the damages it caused. The defendant also admits that it had charge of this property, and had not fully performed its contract; that it remained for it, upon arrival of the steamship, to make delivery of the goods. Under this concession, unless the common-law liability had been modified by the contract, the defendant would be liable for the loss by fire. In the bill of lading there was an express stipulation against such liability. That such exemption from liability was valid is abundantly supported by the authorities cited, and cleared the defendant from liability, unless it was shown that such fire occurred through defendant's negligence. No attempt was made to prove that the railway company was in any way at fault in reference to the fire. But it is said the duty to deliver to the connecting carrier is absolute, and the company cannot shield itself from liability by showing the neglect of the succeeding carrier; citing the following cases: *McLaren v. D. & M. R. Co.* 23 Wis. 138; *Blodgett v. Abbot,* 72 Wis. 516; *Peterson v. Case,* 21 Fed. Rep. 885; *Railroad Co. v. Mfg. Co.* 16 Wall. 318. The rule of those cases is salutary, and is the law of this state as applied to the circumstances therein stated. The trouble is with its application to the facts in this case. Here the carrier had discharged its full duty so far as carriage was concerned. The goods were at their ultimate place of destination by rail. The connecting carrier had no depot, or warehouse, or dock. The stipulation in the bill of lading was that the goods were to be forwarded by a specified steamship company. Unlike carriers by land, it had no specified day of departure. The goods were held by defendant to be delivered in the regular course of business, with reasonable promptness as the ships arrived. There was no possible way by which it could have discharged itself of the custody of the goods until a ship arrived. A tender to the steamship company would have been

futile, because it had no place of storage. This might be
no answer for the defendant if it had not made a provision
in its bill of lading to cover just such a situation. Condi-
tions 3 and 11 seem to cover the case at all points. The
first provision is: "No carrier shall be liable for loss or dam-
age . . . after said property is ready for delivery to the
next carrier." The other says: "No carrier shall be liable
. . . in any other respect than as warehousemen while
said property awaits further conveyance." The two pro-
visions are of similar import, and do not exempt from loss
by negligence. Adopting the language of defendant's coun-
sel:

"To say that these goods were not there upon the pier
*awaiting further conveyance* would be substituting unwar-
ranted refinement of the plain sense of English words. Both
parties to the bill of lading knew that from the necessity of
the case there must be an interval between the carriage by
rail and the further conveyance by boat. It would be dif-
ficult to devise language more clearly covering that interval
than used in the bills of lading."

Unless these conditions are to be considered to cover the
facts present in this case, we can hardly conceive a situation
with reference to these two carriers where they would be
applicable. The empty form of an offer to deliver, under
the circumstances in proof, would not have changed the
actual custody of the goods. Under the usual course of busi-
ness the goods were "awaiting further conveyance." They
were "ready for delivery to the next carrier," as we under-
stand the situation, and we cannot enter into any dubious
refinement to rid ourselves of this impression. The case of
*Lewis v. C. & O. R. Co.* (W. Va.), 35 S. E. Rep. 908, presents
a widely different situation. Two steamers of the line which
was to carry the lumber destroyed left the port after the last
car of lumber should have arrived, and the question whether
the company had used diligence was held to be for the jury
under all the evidence in the case. Another question dis-

cussed in the case was whether there was any consideration shown for any of the limitations in favor of the company. That question is not here, because the bills of lading recite that the conditions inserted are based upon the rate of freight agreed upon. Moreover, the *Schaller Case* holds distinctly that the fact that there was no consideration must be affirmatively shown by the party seeking to avoid the limitations. 97 Wis. 37. Plaintiff's counsel frankly admits that his client cannot urge want of consideration in this case. The facts which seem to have controlled the decision in *Reiss v. T. & P. R. Co.* 98 Fed. Rep. 533, differ substantially from those of the case at bar. There was no exception from liability for loss by fire; at least, none is mentioned. The only thing necessary to put the property destroyed into the possession of the steamship company was the delivery of the transfer sheets. No vessel could be designated or call for the cotton until this was done. Upon these facts the court held that it was not " awaiting further conveyance" at the time of the fire. The conditions here present are so different that it seems easy to distinguish the cases. We are satisfied that the exemptions mentioned contemplated carriage in the usual course of business by rail and by water, and covered such usual delays as are incident to transportation by those means. There was no suspension of transportation at the election of the defendant; no evidence of any negligent exposure of the goods while awaiting further transportation. On the whole case, we are convinced that the trial court arrived at a correct conclusion.

*By the Court.*— Judgment is affirmed.