8]         JANUARY TERM, 1908.         575

John Schroeder L. Co. v. Chicago & N. W. R. Co. 135 Wis. 575.

JOHN SCHROEDER LUMBER COMPANY, Respondent, vs. CHI-
CAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*April 18—May 8, 1908.*

*Railroads: Live stock: Suitable cars: Acceptance of inadequate cars:
Knowledge of inadequacy: Question for jury: Special verdict:
Failure to separate issues.*

1. A common carrier contracting to transport horses is bound to
   furnish suitable cars of sufficient size and adequately venti-
   lated.
2. In order to relieve a common carrier contracting to carry horses
   from liability for damages to them caused by transporting them
   in an unsuitable car, it must appear that the shipper contracted
   to accept such car with full knowledge of its defects and their
   likelihood to produce the injury complained of.
3. Whether a shipper agreed to accept a defective car for transport-
   ing horses with full knowledge of the defects and the likeli-
   hood of injuries resulting therefrom, *held*, under the evidence,
   to be a question for the jury.
4. In an action for damages for loss of horses caused by transport-
   ing them in a car insufficient in size and ventilation, the evi-
   dence is *held* not to warrant, as matter of law, the conclusion
   that the plaintiff contracted to accept the car with full knowl-
   edge of its unsuitableness and the likelihood of injury arising
   from its use.
5. In an action against a common carrier for damages to horses
   caused by transporting them in a car alleged to have been in-
   sufficient in size and ventilation, the special verdict is *held* not
   to have presented properly the issue whether or not plaintiff
   accepted said car with knowledge of its insufficient ventilation
   and of the probable consequences thereof.

APPEAL from a judgment of the circuit court for Ashland
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action was brought by the plaintiff against defendant,
a common carrier, to recover damages alleged to have been
caused by the negligent transportation of horses and har-
nesses delivered to it for carriage, in consequence of which
negligence some of the horses died and the harnesses were

damaged. The answer denied substantially the allegations of the complaint and affirmatively alleged that the injury and damage were proximately caused by the agents and servants of the plaintiff. The jury returned the following verdict:

"(1) Did defendants negligently fail to provide a car suitably ventilated for the purpose of shipping plaintiff's horses and harnesses from Saxon to Ashland? A. Yes. (2) Did defendants negligently fail to provide a car of sufficient size for the purpose of shipping plaintiff's horses and harnesses from Saxon to Ashland? A. Yes. (3) If you answer question No. 1 or No. 2 or questions numbered 1 and 2 by 'Yes,' was said insufficiency of said car the proximate cause of the damage sustained by plaintiff to its said personal property? A. Yes. (4) If you answer question No. 1 or No. 2 by 'Yes,' did plaintiff's agents or servants know that the said insufficient condition of said car might be the proximate cause of an injury to plaintiff's said personal property? A. No. (5) If, from your answers to the foregoing questions, the court is of the opinion that plaintiff should have judgment against defendant, at what sum do you assess plaintiff's damages to his said horses, without interest? A. $1,250. (6) If, from your answer to the foregoing questions, the court is of the opinion that plaintiff should have judgment against defendant, at what sum do you assess plaintiff's damages to his said harnesses, without interest? A. $50."

Judgment was entered upon the verdict. Defendant assigns several errors and appeals to this court from the judgment.

There is evidence tending to show that on Tuesday or Wednesday, March 13th or 14th, plaintiff's superintendent notified the station agent of defendant at Saxon that he wanted to ship some horses to Ashland and wanted a car placed at Saxon; that there were sixteen horses and he wanted a big car. About the 15th of March plaintiff's superintendent again called up Saxon and talked with the night operator, who told him the car was there to ship the horses

in. The following Friday morning, March 16th, Martin and Anthony McGinty took the horses to the station, but objected to the car because it was not large enough, and put the horses in the barn with the understanding that the agent was to provide a larger car for them. The horses were to be shipped about 9 a. m. Friday morning. Some talk was then had between the station agent, Sullivan, and the McGintys, the latter saying the car was too small, that it would not hold eight teams of horses, and the agent saying that it would. The talk was that the car was too small and too low; the agent, Sullivan, however, maintaining that he thought the car was all right, but said that he could probably get a larger car off a freight which was going through about 10:30. The McGintys then assented to this, and the horses were put in the barn to await the larger car. The freight mentioned went through about 12:30, but did not stop, Sullivan, the agent, saying the cars were all loaded and no empties on the train. Finally the agent again said that he knew the horses could be loaded into the car that was there. McGinty testified that he accepted the judgment of the defendant's agent and loaded the teams into the car; that it took a long time because the car was too small. The side door was fastened open a little more than half way to furnish ventilation. The space was about four feet wide and half the height of the car, there being a grain door on the floor coming up about half way. The other side of the car was closed. The load-. ing was finished about three o'clock on March 16th. The defendant's agent then asked McGinty if he was going to Ashland with the horses and he said "No." Defendant's agent said it was not necessary that any one go with the horses, only it would be a free ride if anybody wanted to go to Ashland. McGinty was asked whether there might not be enough air in the car, and he answered that he thought a little more air would not hurt them; that "the more air they got the better they are off." The car in which the horses were shipped had

no end doors. It was an ordinary box car. Mr. Sullivan, defendant's agent, stated that he thought it would be all right to put the horses in the car. One of the McGintys also admitted on cross-examination that he thought the car was not fit because it had no end doors in it for ventilation, but said in the same connection that he did not really think there was not enough ventilation, but that he always saw horses shipped in cars with end doors, and that such doors were in for ventilation, he supposed. He further testified that it did not occur to him that there might not be enough air in the car. The horses arrived at Ashland Friday night. Part were dead, others down, and the harnesses were damaged. The dead and down horses were all in the front end of the car. This was caused by insufficient ventilation, the air going in through the side door to the back end of the car by the motion of the train.

*Edward M. Hyzer,* for the appellant.

For the respondent there was a brief by *Lamoreux, Shea & Cate,* and oral argument by *W. F. Shea.*

KERWIN, J. 1. The defendant is a common carrier and as such contracted with the plaintiff to transport the horses and other personal property in question from Saxon to Ashland for the usual consideration. Under this contract defendant was an insurer against all damage to or loss of the property intrusted to it during transit, except such loss or damage as might arise from the acts of God, public enemies, or the acts of the owner himself, and also "subject to some restrictions and liabilities arising out of the instincts, habits, propensities, wants, necessities, vices, or locomotion of the animals." *Leonard v. Whitcomb,* 95 Wis. 646, 70 N. W. 817; *Klauber v. Am. Exp. Co.* 21 Wis. 21; *Ayres v. C. & N. W. R. Co.* 71 Wis. 372, 37 N. W. 432; *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, 58 N. W. 780. In carrying out its contract the defendant was bound to furnish suitable cars

for the transportation of the horses. *Ayres v. C. & N. W. R. Co., supra.* In the case before us the car furnished was insufficiently ventilated, in consequence of which some of the horses were suffocated and others thrown down and injured. So the question arises whether or not the defendant is liable for failure to furnish a suitable car. The liability, if any exists, rests upon the contract of carriage. It is claimed on behalf of the defendant that a verdict should have been directed, for the reason that the agents of the plaintiff contracted for the shipment of the horses and harnesses in the particular car in which they were shipped with full knowledge of the defects, and therefore it cannot recover in this action. We think sufficient of the testimony has been set out in the statement of facts to show that this position is not tenable, and that it cannot be said as matter of law that the defect in ventilation which was the proximate cause of the injury was so obvious and apparent that plaintiff must be charged with knowledge thereof. There is evidence that the agents of plaintiff first objected to the car furnished mainly because of its size, and put the horses in the barn to await the arrival of a larger car which defendant's agent expected on a freight train going through Saxon about noon; but a larger car was not furnished, and the principal talk was with reference to the ability of the plaintiff's agent to get the horses into the small car. True, there was some talk with reference to ventilation, but this was principally to the effect that it would be better for the horses and their condition during transit if the car were better ventilated by having openings at the ends. There is evidence tending to show that the agents of plaintiff were not aware that there was danger of suffocation on account of the imperfect ventilation. Besides, they acted at least to some extent upon the judgment of the defendant's agent. In order to relieve defendant from liability we must be able to say that plaintiff contracted to accept this car with full knowledge that it was so imper-

fectly ventilated as to be likely to produce the injury complained of, and we are clearly of the opinion that the evidence does not warrant, as a matter of law, any such conclusion, but that the question was clearly one for the jury. Therefore there was no error in refusing to direct a verdict for defendant. *Leonard v. Whitcomb,* 95 Wis. 646, 70 N. W. 817; *Nevius v. C., St. P., M. & O. R. Co.* 124 Wis. 313, 102 N. W. 489; *Densmore C. Co. v. D., S. S. & A. R. Co.* 101 Wis. 563, 77 N. W. 904; *Clarke v. R. & S. R. Co.* 14 N. Y. 570; *Harris v. N. I. R. Co.* 20 N. Y. 232; *Pratt v. O. & L. C. R. Co.* 102 Mass. 557.

2. The only other question necessary to consider upon this appeal is whether the case was properly submitted to the jury. Counsel for appellant asked that the following question be submitted to the jury as part of the special verdict: "Was such insufficiency known to the men in charge of said horses?" We think the vital question in the case was whether or not the car was sufficiently ventilated, and this question we think was properly for the jury, and should have been submitted without complicating it with the question respecting the size of the car. If the sufficiency of size of the car were the only question, this fact was known to plaintiff's agents and they contracted with full knowledge of it. But the important question is whether they knew the danger incident to insufficiency of ventilation. The first question of the special verdict presented to the jury the fact whether defendant failed to provide a car suitably ventilated, and the second question whether defendant failed to provide a car of sufficient size, while the fourth question requires them to answer whether, if the first or second question be answered "Yes," plaintiff's agents or servants knew that said insufficiency might be the proximate cause of an injury to plaintiff's property. Now, this condition of the verdict left the jury to answer the fourth question "No" if they should find either that the car was not suitably ventilated or

not of sufficient size. So we think under the verdict as presented the real issue in the case was not fairly and clearly submitted to the jury, namely, whether or not plaintiff's employees knew the probable consequences of the defective ventilation, and, so knowing it, accepted or selected the car in question. We think for failure to submit the question asked by counsel for appellant or some suitable question as above indicated the judgment must be reversed and a new trial granted. Other errors discussed need not be considered.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.