THE ÆTNA INSURANCE COMPANY, Respondent, *v.* WILLIAM A. WHEELER et al., Appellants.

Where a common carrier contracts for the transportation of freight over his route, and for the delivery thereof to another carrier to be forwarded over connecting lines to its ultimate destination, the fact that the contract fixes the price for the entire carriage does not make the contract a through contract, so as to entitle the succeeding carriers to the benefit of exceptions from liability contained in the contract.

Where there is an agreement between two common carriers, operating connecting lines, for the carriage of freight over both routes at an agreed price to be divided between them, and where they have, at the point of connection, a warehouse used in common for the transfer of freight from one line to the other, the expenses of handling being paid in common, a delivery of freight at the warehouse by one carrier destined to pass over the line of the other, with notice to the latter of its arrival and ultimate destination, places it in the possession of the latter, and imposes upon him the duties and liabilities of a common carrier in reference thereto.

Argued May 31, 1872; decided June 11, 1872.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, reversing a judgment in favor of defendants entered upon the report of a referee and directing a new trial.

The action was brought to recover the amount of insurance paid by plaintiff upon a quantity of flour shipped at Milwaukie for Boston, and alleged to have been destroyed by fire at Ogdensburgh while in the possession of the defendants as common carriers. The flour was shipped upon one of the boats of the Northern Transportation Company, which company ran a line of propellers from Milwaukie to Ogdensburgh, where it connected with the Northern Central railroad for Boston. The road was run and operated by defendants. The railroad and propeller line ran in connection under a *pro rata* agreement as to freight. The substance of the bill of lading and the facts pertinent to the questions decided appear in the opinion.

*L. Hasbrouck, Jr.*, for the appellants. Defendants' delay, after notice from the Northern Transportation Company, in forwarding the flour cannot make it liable. (*Wibyert* v. *N. Y. & E. R. R. Co.*, 12 N. Y., 245.) The special exemption against loss by fire in the bill of lading was valid. (*Dorr* v. *New Jersey Steam Navigation Company*, 1 Kernan, 485; *Bissell* v. *N. Y. Central*, 25 N. Y., 442; *Lee* v. *Marsh*, 43 Barb., 102; *Steinway* v. *Erie Ry. Co.* [Ct of Appeals], N. Y. Transcript, April 17, 1871.) This was an entire contract to carry the flour from M. to B., which the Northern Transportation Company was obliged to fulfill. (*Russell* v. *Livingston*, 16 N. Y., 515.) If defendants were subject to any duty or responsibility in respect to the flour, it was only under the contract of the Northern Transportation Company with the owner, and defendants are entitled to the benefit of all stipulations in such contract affecting its liability. (*Manhattan Oil Co.* v. *Cam. & Am. R. R. Co.*, 52 Barb., 73; 5 Abb. Pr. R. [N. S.], 289; *Collins* v. *B. & Ex. R. Co.*, 25 L. J. R. Exch., 185; 29 id., 41; 7 H. L. Cases, 194; *Bald-*

SICKELS—VOL. IV.     78

*win* v. *U. S. Tel. Co.*, 1 Lans., 130 ; *Thornton Check* v. *Little Miami R. R. Co.*, 7 Am. Reg., 427 ; *Caxon* v. *Gt. W. R. Co.*, 5 H. &. N., 274 ; *McMullen* v. *M. S. & N. I. R. R. Co.*, 16 Mich. [3 Jerm.], 79, 123 ; *Magee* v. *Cam. & Am. R. R.*, Albany Law Journal, Sept. 9, 1871, p. 113.)

*George B. Hibbard* for the respondent. Defendants are liable as common carriers, as receivers they were not officers of the court, if they were they would be liable in this action. (*Sprague* v. *Smith*, 29 V., 421 ; *Blumenthal* v. *Brainerd*, 38 id., 403 ; *Lamphier* v. *Buckingham*, 33 Conn., 237 ; *Rogers* v. *Wheeler*, 43 N. Y., 598.)   The flour when burned was in defendants' possession as common carriers, and they were liable to plaintiffs for its loss. (*Hart* v. *W. R. R. Co.*, 13 Metc., 99, 108 ; *Home Ins. Co.* v. *N. W. T. Co.*, 4 Robt., 257 ; *Wing* v. *N. Y. & E. R. R. Co.*, 1 Hilt., 235 ; *Green* v. *Clark*, 2 Kern., 343 ; *Root* v. *G. W. R. R. Co.*, 2 Lans., 199 ; *Coyle* v. *W. R. R. Co.*, 47 Barb., 152 ; *Hempsted* v. *The N. Y. C. R. R. Co.*, 28 id., 485 ; *Michaels* v. *The N. Y. C. R. R.*, 30 N. Y., 564 ; *Richardson* v. *Godard*, 23 Howard, Sup. C. U. S., 28, 39 ; *Fitchburg & W. R. Co.* v. *Hanna*, 6 Gray, 539 ; Ang. on Car., § 131 ; *Blossom* v. *Griffin*, 3 Kern., 569 ; *Ladue* v. *Griffith*, 25 N. Y., 364 ; *Converse* v. *N. Y. Co.*, 33 Cow., 166, 182 ; *Trade* v. *Wheeler*, 3 Lans., 201 ; *Fenner* v. *B. & S. L. R. R. Co.*, 44 N. Y., 505, 507, 508 ; *Hartman* v. *Proudfit*, 6 Bosw., 191.)   Defendants were liable, whether they or the Northern Transportation Company, as between themselves, were in the precise technical possession of the property. (*Fairchild* v. *Slocum*, 19 Ward., 329 ; 7 Hill., 292 ; *Champion* v. *Bostwick*, 11 Wend., 571 ; 18 id., 175 ; *Ladue* v. *Griffith*, 25 N. Y., 364 ; *Hart* v. *The R. & S. Co.*, 4 Selden, 37 ; *Fitchburg & W. R. Co.* v. *Hanna*, 6 Gray, 539 ; *Cobb* v. *Abbott*, 14 Pickering, 289 ; *Murchamp* v. *The L. & P. J. R. Co.*, 8 Mees. & Wels., 421 ; *Merrick* v. *Gordon*, 20 N. Y., 93 ; *Bristol* v. *R. & S. R. R. Co.*, 9 Barb., 158.)   Defendants not having pleaded the non-joinder of the Northern Transportation Company as defendants, it is

waived. (Code, §§ 144, 147; *Fowler* v. *Kennedy*, 2 Abbott, 351; *Wigand* v. *Sichel*, 3 Keyes, 120; *Scranton* v. *F. & M. Bank*, 33 Barb., 527.) Nothing in connection with the action of the government can exempt the defendants from liability. (*Wibert* v. *W. & E. R, R. Co.*, 2 Kern., 245, 257; Ang. on Car., § 202.) Defendants would be liable for this loss if the government had caused the delay. (Angell on Carriers, §§ 148, 201 and cases; Story on Bail., § 526, and cases; *McArthur* v. *Sears*, 21 Wend., 190, 199; *Merrill* v. *Earle*, 31 Barb., 38, 45; 29 N. Y., 115, 118; *New B. S. Co.* v. *Tiers*, 4 Zabr., 697; *Miller* v. *The S. W. Co.*, 10 N. Y., 431; *Wibert* v. *N. Y. & E. R. Co.*, 2 Kernan, 245; *Blackstock* v. *N. Y. & E. R. Co.*, 20 N. Y., 48.)

GROVER, J. The order not stating that the judgment was reversed upon questions of fact, it must be assumed that the reversal was upon questions of law only. (Code, § 268.) The questions of law involved are whether the defendants were entitled to the benefit of the exceptions from the common-law liability of carriers contained in the contract of the Northern Transportation Company for the transportation of the flour; and, second, whether, from the facts found by the referee, the flour, at the time of its destruction by fire, was in the possession of the defendants as common carriers. The first question depends upon the construction of the contract of the Transportation Company. This, like every other contract, must be so construed as to carry into effect the intention of the parties, manifested by the language used, and if necessary, in the light of the surrounding circumstances. The contract was made and dated at Milwaukie, July 12th, 1864, as follows: "Shipped in good order and well conditioned, by A. J. Hale, as agent and forwarder, for account and risk of whom it may concern, on board the propeller City of New York (C. J. Chadwick, master), now lying in the port of Milwaukie, and bound for Ogdensburgh, the following articles, marked and numbered as per margin, and which are to be delivered in like good order and condition (the leakage of

oils, molasses, liquors and other liquids, and the dangers and accidents of navigation, fire and collision excepted), without delay unto consignees at Ogdensburgh, paying freight and charges." In the margin was "H. & W. Chickering, Boston; care of George A. Eddy, agent, Ogdensburgh;" also a statement of property shipped (the flour in question, freight to Boston, $1.10 bbl.).

The facts found show that the Transportation Company had an agreement with the defendants, who were in possession of and operating a railroad as common carriers, running east from Ogdensburgh, to transport over their respective lines through freight in connection, and divide the compensation therefor as provided by the agreement. In *Maghee* v. *The Camden and Amboy Transportation Company* (45 N. Y., 514) it was held by this court, that when a railroad company contracted to transport and deliver goods at a point beyond its own line, containing a provision excepting liability from certain specified hazards, the connecting road which received the goods from the contracting road to carry to their destination was entitled to the benefit of such exception. Had the Transportation Company contracted for the carriage of the flour to Boston, this case would be governed by the case cited; but that was not the contract. It contracted for the carriage of the flour to Ogdensburgh only; and that the same should be forwarded by other lines to Boston; and that the freight for the entire carriage should be $1.10 a barrel. Hence the case cited does not apply. This precise question, upon a state of facts more favorable to the party claiming the exception than those in the present case, arose in the *Camden and Amboy Railroad Company* v. *Forsythe* (61 Penn., 81); and it was there held that it was not an undertaking by the contracting road to carry the property to its destination, but simply over its own line, and then deliver it to the connecting road to forward to its destination; and that contracting for the entire carriage for a fixed price to be shared by the roads did not change the contract in this respect; and hence the last, or contract-

ing road, was not entitled to the benefit of the exception contained in the contract. The authorities cited in the opinion of SHARSWOOD, J., fully sustain this position. In the absence ·of authority, I think the plain meaning of the contract is that the exception should apply only during the carriage of the property by the Transportation Company, and its delivery by it to the connecting line. The substance of the finding, as regards the second question, is that there was at the time an existing agreement between the defendants and the Transportation. Company for the carriage of goods passing over both lines for a sum agreed upon for the entire service, to be divided between them as provided in the agreement; and that upon the arrival of boats of the Transportation- Company at Ogdensburgh, destined east, the course of ·business was for the crew to unload such goods upon the dock, where they were taken possession of by J. Chamberlin & Co. and placed in a warehouse, by the side of which the tracks of the defendants extended, and give notice to the defendants. That when the defendants were ready to forward such goods their cars were run along by the side of the warehouse, from which the goods were taken and loaded upon the cars. That for this handling of the goods Chamberlin was paid thirty cents per ton; one-half by each company. The further fact found, that the bargain for this service was made with Chamberlin by the Transportation Company, was immaterial. The service performed by him was in the common business of both, and he was paid by each equally therefor, and must be considered in the employ of both. The title to the warehouses was not material. They were used by both parties for the transaction of this business; and the defendants owning both, to equalize the matter, rent for one was paid by the Transportation Company to the defendants, but both were used by the parties for the transaction of the business. It is the use of the warehouse that is to be looked at, and not the title, in determining the question. I have looked outside of the findings for some of the facts, for the reason that the case is referred to in the findings for this

purpose.   What is said about the key being kept, when out of the possession of an employe of Chamberlin in the office of the Transportation Company, by the witness is not material, as there is no pretence but that property, placed where this was, was taken and transported by the defendants at their pleasure.   The case shows that notice of the arrival of this property and its destination was given by the Transportation Company to the defendants, by whom it was entered on their books for transportation.   The flour remained in the warehouse for eight days after this, for the reason that the defendants had not cars for its transportation, when with the warehouse it was destroyed by an accidental fire.   In *Coyle* v. *The Western Railroad Corporation* (47 Bab., 152) it was held that placing barrels in the usual place of delivery to a forwarder for transportation, which were received by persons in its employ, a part with the knowledge of its agent, though not counted, tallied or receipted for, as had been usual between the parties, placed them in its possession as a common carrier.   In *Converse* v. *The Norwich Transportation Company* (33 Conn., 166) it was held that when a company, engaged in the transportation of goods by water, in connection with a railroad company, for through rates, divided between them, and the usage was for the boats, upon arrival, to deposit such goods upon a covered wharf used in common, and for the railroad to take such goods from there for transportation, that a deposit by the boat, according to the usage, was a delivery; and that the water line was thereby discharged from further responsibility.   (See, also, *Mills* v. *The Michigan Central Railroad*, 45 N. Y., 622.)   In the present case, the flour was not only deposited in the usual place, but notice was given to the defendants, who entered it upon their books.   From this time it must be held to have been in the possession of the defendants as common carriers.

The order appealed from must be affirmed, and judgment absolute given for the plaintiff upon the stipulation

All concur.

Order affirmed, and judgment accordingly.