WASHBURN CROSBY COMPANY *vs.* BOSTON AND ALBANY
RAILROAD COMPANY.

Suffolk.   November 20, 21, 1901. — January 2, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Carrier*, Delivery. _ *Bill of Lading. Sale. Practice, Civil. Evidence*, Proof of
foreign law.

One who declares on a contract contained in a bill of lading cannot in support of
his action take the ground that the bill of lading is void.

On the argument of exceptions the court cannot take notice of the law of another
State not proved at the trial.

When a temporary receipt is issued by a carrier in contemplation of the substitu-
tion of a bill of lading, the bill of lading when issued is the first and only con-
tract between the parties.

In an action against a carrier for loss of goods by fire, it appeared, that the defend-
ant was a railroad company having a pier at the end of its line, that a portion
of this pier on one side of the defendant's tracks was used and occupied for the
purpose of receiving goods by the steamship company to which the bill of lading
required the goods to be delivered, and that the goods were unloaded from the
defendant's cars upon this portion of the pier, that the superintendent of the
steamship company had an office there, that previously the defendant had given
the steamship company notice by a letter, which remained unanswered and
seemingly acquiesced in, that unloading steamship freight at that place consti-
tuted delivery on the defendant's part and thereafter it assumed no responsi-
bility.  *Held*, that these facts warranted a finding of an actual delivery by the
defendant; that it might have been found that it was understood in advance
that as soon as goods were left on the wharf by the railroad company the
steamship company was free to take them at its pleasure, and that it was
expected to take notice of their presence and to assume responsibility for them
without more special notification.

In an action against a railroad company for loss of goods by fire, it appeared,
that the bill of lading stipulated that the defendant should not be liable " in
any other respect than as warehouseman, while the said property awaits fur-
ther conveyance," and that no carrier should be liable " after said property is
ready for delivery to the next carrier."  The goods were unloaded from the
defendant's cars upon a pier belonging to the defendant to be taken thence by
a steamship company.  The defendant had contracted only for itself and was
not bound to carry beyond its own road.  *Semble*, that there was nothing con-
trary to public policy in the above stipulation and that under it the defendant's
liability as a common carrier had ceased, and it was liable only in case of
negligence.

When a shipper of goods draws on a bank for the full amount of the purchase
money, attaching to his draft the bill of lading indorsed in blank, and receives
the money, whether he retains the general property in the goods is still an open
question in this Commonwealth.

CONTRACT on bills of lading, with a count alleged to be in tort for the same cause of action, for the value of certain flour unloaded from cars of the defendant and destroyed by fire on its wharf at that part of Boston called East Boston.   Writ dated October 14, 1896.

At the trial in the Superior Court, *Gaskill*, J. made certain rulings, which are stated by the court, and proposed to leave the case to the jury upon those instructions, whereupon the plaintiff's counsel consented that the jury might return a verdict for the defendant, the judge saving the plaintiff's exceptions to the rulings.   The judge then said that the verdict was to stand with reference to the first count if either of the rulings relating to the first count was correct, and the verdict was to stand upon the second count if the ruling with reference to the second count was correct; if either ruling was erroneous, a new trial was to be ordered upon that count to which the ruling applied.   This was assented to by counsel.   The judge then ordered the jury to return a verdict for the defendant.   Such a verdict was returned; and the plaintiff alleged exceptions.

*H. M. Rogers & J. Lowell*, for the plaintiff.

*S. Hoar*, ( *W. Hudson* with him,) for the defendant.

HOLMES, C. J.   This is a suit to recover the value of certain flour shipped by the plaintiff at Minneapolis, consigned to third parties at London, and destroyed by fire at East Boston.   There are two counts, the first seeking to hold the defendant as a common carrier on through bills of lading issued by the Western Transit Company and binding the defendant among others, the second, treated by the parties as a count in tort, seeking to hold the defendant for negligence as a warehouseman.   At the trial the judge ruled that the plaintiff could not recover upon the second count.   As to the first he ruled that if the western portion of Pier No. One at East Boston, (where the flour was when destroyed,) " was regularly, habitually and uniformly used and occupied by the Johnston Steamship Company in the ordinary course of business of forwarding flour that arrived by the Boston and Albany Railroad, destined for carriage on its steamships, the jury would be justified in regarding it as the steamship pier named in the bill of lading, and if the flour destroyed was there deposited . . . with knowledge of or notice to the Johnston

Steamship Company, then the liability of the Boston and Albany Railroad Company had ceased." The judge also ruled that if the flour destroyed was unloaded from the cars of the railroad upon the pier, even though it were not the steamship pier, the obligation of the defendant as a common carrier had ceased and the relation of warehouseman had attached.

The plaintiff excepted to these rulings and consented to a verdict for the defendant subject to its exceptions, with the understanding that if either ruling under the first count was correct the verdict was to stand with reference to that count.

The plaintiff's main argument is upon the first ruling under the first count. It contends that it was not bound by the stipulation in the bills of lading to which the ruling referred and which we shall mention hereafter, and that if it was bound, the defendant was not free until it had made an actual delivery to the next carrier in the line, the steamship company, and that there was no evidence of such delivery because it did not appear that the steamship company had been notified of the deposit of the goods.

With regard to the validity of the bills of lading, the fact relied on is that when the goods first were shipped the sealer of the railroad receiving them gave a receipt simply acknowledging that the railroad had received the flour, and that the bills of lading were issued subsequently upon surrender of the receipt. It is argued that the provisions of the bills of lading are an attempt to cut down the liability already assumed, and by the law of Minnesota are without consideration and void. There are so many answers to this contention that it seems hardly worth while to state any. In the first place, the plaintiff declares on the bill of lading, so that it is rather late now to say that it is void. Then we cannot take notice of the law of Minnesota as it was not proved at the trial. *Hackett* v. *Potter,* 135 Mass. 349, 350. Again the receipt seems obviously to have been understood to be a temporary document issued in contemplation of the substitution of the bill of lading. Again, so far as appears, the receipt bound only the company that issued it and the bill of lading is the first and only contract between the plaintiff and the defendant. We think it unnecessary to go on.

By a clause of the bills of lading applicable to the case, the

defendant's liability terminated " on the delivery of said property . . . to the Steamship Company, or on the steamship pier at the said port" of East Boston. With regard to delivery the main facts are these. The pier where the flour was belonged to the defendant, but there was evidence that the portion west of a railroad track that ran down the middle of the pier was used and occupied for the purpose of receiving goods by the steamship company, whose superintendent had an office there, and that delivery upon the pier was a delivery to the steamship company. It appeared also that the defendant had given the steamship company notice, by a letter which remained unanswered and seemingly acquiesced in, that unloading of steamship freight at that place constituted delivery on the defendant's part, and that thereafter it assumed no responsibility for the same. It is said that these facts show no more than a constructive delivery not sufficient as against the plaintiff in the absence of special notice to the steamship company. The plaintiff also adverts to the fact that the bags of flour were counted before being put on board the steamer as something remaining to be done before delivery was complete. But this last matter may be dismissed, as at least it might have been found to be a precaution taken by the steamship company solely for its own satisfaction after delivery to it. The bags were counted by the defendant when they were taken from the car to the wharf.

The facts which we have recited warranted a finding of an actual delivery by the defendant, and therefore the question as to the effect of agreements beween carriers discussed in Hutchinson, Carriers, (2d ed.) § 104, need not be considered. The fact that the wharf belonged to the defendant and that the defendant's title might have been made a ground of possession of what was on it by excluding others from access, (*Elwes* v. *Brigg Gas Co.* 33 Ch. D. 562, 568; *South Staffordshire Water Co.* v. *Sharman*, [1896] 2 Q. B. 44,) is immaterial, because the title was not used in that way, but the wharf, although probably not technically in the possession of the steamship company, *Kerslake* v. *Cummings, ante,* 65, was a neutral spot agreed upon for the delivery of the goods. *Ætna Ins. Co.* v. *Wheeler,* 49 N. Y. 616, 621. Compare *Parry* v. *Libbey,* 166 Mass. 112, 113. If then, as might have been found, it was understood in advance that as

soon as goods were left on the wharf by the railroad the steamship company was free to take them at its pleasure and that it was expected to take notice of their presence and to assume responsibility for them without more special notification, the deposit of the flour on the wharf was an actual delivery without more. *Merriam* v. *Hartford & New Haven Railroad*, 20 Conn. 354, 361. *Converse* v. *Norwich & New York Transportation Co.* 33 Conn. 166, 182. *Pratt* v. *Railway Co.* 95 U. S. 43. *Truax* v. *Philadelphia, Wilmington & Baltimore Railroad*, 3 Houst. 233, 251. See *Ætna Ins. Co.* v. *Wheeler*, 49 N. Y. 616, 622; *Howard* v. *Daly*, 61 N. Y. 362, 365.

Enough has been said to show why in our opinion the first ruling under the first count was sufficiently favorable to the plaintiff. We say sufficiently favorable, because the instruction required the jury to find knowledge or notice of the presence of the flour on the part of the steamship company, whereas, according to the cases last cited and plain good sense, it would be enough if there was the understanding between the two companies which we have supposed and which the evidence proved.

Under the agreement made at the trial it seems to be unnecessary to discuss the other ruling upon the first count. We do not see why it was not correct under the eleventh clause of the bill of lading, if not on more general grounds. By that clause the defendant is not liable " in any other respect than as warehouseman, while the said property awaits further conveyance." So by clause three no carrier shall be liable " after said property is ready for delivery to the next carrier." The defendant had contracted only for itself, it was not bound to carry beyond its own road, and there is nothing contrary to public policy in the stipulation. *Courteen* v. *Kanawha Dispatch*, 110 Wis. 610.

The second count was treated by both parties as a count in tort, and therefore the judge was warranted in treating it as such and we shall do the same. Perhaps it is an echo of the old cases in which the primitive assumpsit or entry upon the business was laid as the inducement to a declaration in tort, the plea being not guilty. *Powtuary* v. *Walton*, 1 Roll. Abr. 10, pl. 5. *Coggs* v. *Bernard*, 2 Ld. Raym. 909, 919. In modern times the assumpsit is generally taken in the sense of contract. *Boorman* v.

*Brown,* 3 Q. B. 511, 526. *Fleming* v. *Manchester, Sheffield & Lincolnshire Railway,* 4 Q. B. D. 81.

It is enough to say with regard to the ruling on this count that we see no evidence of negligence on the defendant's part. It is urged as a further ground that the plaintiff had no title because it had sold its drafts, with the bills of lading indorsed in blank attached, to a bank, had received its money, and, if the goods had not been destroyed, would have heard no more about them. As a tort, even when founded on a contract considered not as a promise but as a special relation which gives occasion to the duty and corresponding right, is an injury to a right *in rem,* the plaintiff must show such a right, and this it fails to do if its whole title at law is gone. We express no opinion with regard to this argument which is not without its difficulties.

It might be said that this case is different from *De Wolf* v. *Gardner,* 12 Cush. 19, because there the action was trover and depended upon a present right of possession, whereas this might be treated as an action on the case for the destruction of the plaintiff's general property, if we are to regard the bank as holding only a pledge. *Mears* v. *London & South Western Railway,* 11 C. B. (N. S.) 850. For while there is no doubt that transactions like the present put an end to the right of possession of the indorser of the bill of lading, this court has been very cautious not to commit itself unnecessarily as to the precise effect of such indorsements, and it still is open to argument that the general property does not pass. *Fifth National Bank of Chicago* v. *Bayley,* 115 Mass. 228, 230. *Hathaway* v. *Haynes,* 124 Mass. 311, 313. *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154, 156. *Hallgarten* v. *Oldham,* 135 Mass. 1, 8.

The question has been much discussed and has been the subject of difference of opinion in England, as may be seen sufficiently in *Sewell* v. *Burdick,* 10 App. Cas. 74. Some American cases seem to regard it as giving security by way of title and not merely by way of constructive possession. *Gibson* v. *Stevens,* 8 How. 384, 400. *The Thames,* 14 Wall. 98, 108. *Farmers' & Mechanics' Bank* v. *Logan,* 74 N. Y. 568, 582, 583. As we have said, we do not think it necessary to decide the matter in this case.

*Exceptions overruled.*