Farnsworth-Evans Co. v. Railroad.

FARNSWORTH-EVANS Co. *v.* CHICAGO, M. & G. R. Co.
*et al.**

(*Jackson.* April Term, 1913.)

1. CARRIERS. Carriage of goods. Connecting carriers. Lia-
bility. Delivery.

Where goods, shipped over the roads of two connecting carriers
under a bill of lading providing that the legal remedy for
loss or damage should be only against the particular carrier
in whose custody they actually were, were destroyed by fire
after they had been placed upon a spur track at the junction
point, and after waybills had been delivered to the common
agents of the carrier at that point, who had made the clerical
entries showing the exchange, but the cars containing the
shipment had not yet been inspected and accepted by the
connecting carrier in accordance with its custom, there was
no actual completed delivery to the connecting carrier, and
the first carrier is liable for the loss. (*Post, pp.* 53, 54.)

Cases cited and approved: Railroad v. Barnett, 69 Ark., 150;
Hewett v. Railroad, 63 Iowa, 611; Buston v. Railroad (C. C.),
116 Fed., 235; Washburn-Crosby Co. v. Railroad, 180 Mass.,
252; Merriam v. Railroad, 20 Conn., 354; Converse v. Trans-
portation Co., 33 Conn., 166; Texas & Pacific Railroad Co. v.
Clayton, 173 U. S., 348.

2. CARRIERS. Carriage of goods. Connecting carriers. Lia-
bility. Delivery.

The fact that the cars were customarily hauled by an engine of
the connecting carrier to the track where they were inspected,
for which a charge was made against the initial carrier, does

*The authorities on the liability of a connecting carrier for loss
beyond its own line, are reviewed in an extensive note in 31 L. R. A.
(N. S.), 1. And upon the liability of a carrier of property for loss
occurring on connecting line, but due to its own negligence, see
note in 19 L. R. A. (N. S.), 1012.

Farnsworth-Evans Co. v. Railroad.

not show actual possession by the connecting carrier before inspection and acceptance. (*Post, p.* 58.)

Case cited and approved:    Huntting Elevator Co. v. Bosworth, 179 U. S., 415.

3. CARRIERS. Carriage of goods.    Connecting carriers.    Liability.    Delivery.

Nor was the lodgment of the waybills with the agent, even though he be considered the agent of the connecting carrier, conclusive of delivery, so long as the physical movement to the track where the cars were inspected remained to be made by the first carrier. (*Post, p.* 59.)

Cases cited and approved:    Missouri P. R. Co. v. McFadden, 154 U. S., 155; Bosworth v. Railroad Co., 87 Fed., 83; Railroad v. Bickley, 119 Tenn., 528; Mt. Vernon Co. v. Railroad, 92 Ala., 296; Aetna Ins. Co. v. Wheeler, 49 N. Y., 616; Insurance Co. v. Railroad, 124 Tenn., 57.

FROM SHELBY.

Appeal from Chancery Court, Shelby County.— FRANCIS FENTRESS, Chancellor.

PERCY & HUGHES and J. E. McCADDEN, for plaintiff.

CARUTHERS EWING, FITZHUGH & BIGGS and THOS. A. EVANS, for defendants.

Mr. Justice WILLIAMS delivered the opinion of the Court.

On November 13, 1909, complainant, Farnsworth-Evans Company, made a through shipment of fifty bales of cotton from Ridgely, Lake county, a station on the line of the defendant Chicago, Memphis & Gulf

Railroad Company (hereafter called, for convenience, the first carrier), to Covington, Tipton county, a station of the other defendant, Illinois Central Railroad Company (hereafter called the connecting carrier). This shipment was in two cars, and two separate bills of lading were issued therefor. These two cars of cotton arrived at Dyersburg, the terminus of the first carrier, November 13, 1909, about 4:40 p. m. They were placed by the first carrier on what is known as Calcutt's new spur track, which was distant approximately two miles from the depot at Dyersburg, and was constructed as an industrial track to serve a sawmill; this spur being beyond the then existing yard limit. At about 8:40 the night of the same day the sawmill burned; the fire communicating to the two cars, destroying their contents.

This suit was brought by the consignor against both carriers to hold them liable for the loss thus occurring. Both of the carriers answered, denying liability, and it should be noted that there is no cross-pleading between the two defendant carriers containing allegations in regard to liability of the one to the other, or as to the primary liability.

It appears from the proof that the Calcutt new spur was not in regular use as a transfer spur, but that on occasion of a crowded condition of the yard proper, use was made of that track for interchange, under special arrangement to that end. The conductor of the first carrier, promptly after the arrival of his train at Dyersburg and the leaving of these two cars on the

spur referred to, turned in a report in writing, known as a "wheel report," and made delivery of the way-bills for the two cars of cotton. A common agent served both carriers at Dyersburg, and both the report and the waybills were lodged with him shortly after 4:40 p. m. A clerk made up a report showing inter-change of the cars, which is filed in proof, and shows that between 7 a. m. and 7 p. m., on November 13th, the connecting carrier had received from the first carrier the two cars in question. A *per diem* sheet is also filed, showing only one day's charge for one day's use by the first carrier of the two cars, to wit, on November 13th.

Testimony introduced by each of the carriers tended to show, in general terms, possession of these cars on the part of the other rather than of itself, at the time of the fire.

One of the determining factors of the case is a recitation in the bills of lading to the following effect:

"For all actionable loss or damage occurring in the transit of the property, the legal remedy shall be against the particular carrier only in whose custody the same may actually be at the time of the happening thereof."

A considerable portion of the brief in behalf of the connecting carrier is given to a discussion of its con-tention that any delivery indicated to have been made to it was but a constructive delivery, and that there could not have been a constructive delivery of the cars in question, because they were not in condition fit for

acceptance by it, in that the cars were not cleated and did not have their end windows closed when they were placed upon the spur track—both being requisite in order to acceptance by the connecting carrier. The connecting carrier's insistence is that nothing short of an actual acceptance of the cars would, in view of these defects shown to have existed, bind it to liability for the loss; and reliance is placed upon the rule to that effect announced in 1 Hutchinson on Carriers, sec. 151; *Railroad* v. *Barnett*, 69 Ark., 150, 61 S. W., 919; *Hewett* v. *Railroad*, 63 Iowa, 611, 19 N. W., 790, and *Buston* v. *Railroad* (C. C.), 116 Fed., 235.

In view of the clause in the bill of lading above quoted, we are of opinion that the true test of responsibility is *actual possession*, and that the liability must fall on that carrier in whose actual possession the cars were when they were burned.

The authorities are not clear in distinguishing, in certain phases, constructive delivery from actual delivery from a first to a connecting carrier. The Supreme Judicial Court of Massachusetts had before it a case involving such a delivery. It there appeared that a railroad company had a pier at the end of its line; that a steamship company, which formed a connection with it at that point, used and occupied a portion of the pier for the purpose of receiving freight there deposited by the railroad company for further transportation by the steamship company; that unloading freight in such manner was regarded by both companies as a delivery to the steamship company.   A

quantity of flour thus placed was destroyed by fire. Suit was brought against the railroad company for its value. In deciding the question, which turned on delivery, Chief Justice Holmes said: "If it was understood in advance that, as soon as the goods were left on the wharf by the railroad company, the steamship company was free to take them at pleasure, and that it was expected to take notice of their presence and to assume responsibility for them without more notification, the deposit of the flour on the wharf was an actual delivery, without more." *Washburn-Crosby Co.* v. *Railroad,* 180 Mass., 252, 62 N. E., 590.

The above ruling was based upon the authority of earlier decisions by the Connecticut court in *Merriam* v. *Railroad,* 20 Conn., 354, 52 Am. Dec., 344, and *Converse* v. *Transportation Company,* 33 Conn., 166.

The Supreme Court of the United States had before it a case of claimed delivery by a first to a connecting carrier, under a bill of lading containing substantially the same clause as those in this case quoted above, in *Texas & Pacific Railroad Company* v. *Clayton,* 173 U. S., 348, 19 Sup. Ct., 421, 43 L. Ed., 725. Mr. Justice Harlan, in delivering the opinion of the court, said:

"In the case at bar, the facts plainly indicate that, although the goods had been placed by the first carrier upon the wharf, and although that was the place at which the steamship company was to receive or usually received goods from the railway company for further transportation, they were not in the actual possession or under the actual control of the connecting carrier

at the time of the fire. The connecting carrier had not given a mate's receipt for the cotton or assumed control of it. True, it had received notice that the goods were on the wharf and could be taken into possession; but such notice did not put the cotton into the actual custody of the connecting carrier. The opportunity given it to take possession, or its mere readiness to take possession, was not, under the contract, equivalent to placing the cotton in the actual custody of the steamship line. The undertaking of the railway company was to transport safely and deliver to the next connecting carrier. But its further express agreement was, in substance, that if any carrier incurred liability to the shipper in respect of the goods, that carrier alone was to be liable who, at the time the cotton was damaged or lost, had it in actual custody. In other words, the delivery to the connecting carrier, which would, as between the first carrier and the shipper, terminate the liability of such carrier, must have been a delivery that put the cotton into the actual, not constructive, custody of the connecting carrier. To hold otherwise is to eliminate from the contract the clause relating to actual custody. The entire argument of the learned counsel for the railway company in effect assumes that the contract means no more than it would mean if that clause were omitted. But the court cannot hold that clause is meaningless, or that it was inserted in the contract in ignorance of the meaning of the words 'actual custody.' Nor can it be supposed that the parties understood the contract to mean that the connecting

carrier was to be deemed to have actual custody from the moment it could have taken actual custody if it had seen proper to do so. So far as the shipper was concerned, the actual custody of the first carrier could not cease until it was in fact displaced by the actual custody of the connecting carrier. It may be that the railway company has good grounds for saying that, as between it and the connecting carrier, the latter was bound to take actual custody whenever the railway company was ready to surrender possession, and thereby relieve the latter from possible liability to the shipper in the event of the loss of the cotton while in its custody. That is a matter between the two carriers, touching which we express no opinion. But we adjudge that the shipper cannot be compelled, when seeking damages for the value of his cotton destroyed by fire in the course of its transportation, to look to any carrier except the one who had actual custody of it at the time of the fire. One of the conditions imposed upon him by the contract was that, if any carrier became liable to him, he should have no remedy except against the one having such actual custody. That remedy should not be taken from him by a construction of the contract inconsistent with the ordinary meaning of the words used.''

The learned justice then proceeded to discuss the two Connecticut cases above referred to, observing that in neither of them was there any clause in the contract of carriage to the effect that the shipper, in enforcing his claim for liability, should look alone to the carrier

which had the actual custody of the goods at the time they were destroyed. It thus appears that in the opinion of that court the deliveries in the Connecticut cases were by it deemed to have been constructive deliveries.

Applying the rule of the *Clayton Case,* we have only to inquire with which of the two carriers was the actual possession of the two cars of cotton when they were destroyed. The proof is not satisfactory as to the movement of the cars from the Calcutt new spur to the yard proper, nor as to what duty, if any, was incumbent on the first carrier after depositing the cars on the spur beyond the yard limits in order to a delivery. It is established, however, as an uncontradicted fact, by the car inspector of the connecting carrier, that the inspection, as to sufficiency of equipment and of loading, customarily took place within the yard limits on a go-away track where they would be accepted, or rejected and turned back to the first carrier; that the engine of the connecting carrier moved cars from other tracks to the go-away track, but that in so doing the engine performed under contract the service for the first carrier which paid for the service. We conceive, therefore, that it is shown that a further act remained to be performed by the first carrier in order to an actual delivery to the connecting carrier—the switching of the two cars from the Calcutt spur to the go-away track within the yard. The fact that the engine of the connecting carrier was thus used did not render its use an acceptance of the cars by the connecting carrier as

on actual delivery. *Huntting Elevator Co.* v. *Bosworth,* 179 U. S., 415, 21 Sup. Ct., 183, 45 L. Ed., 256.

Neither should the lodgment of the waybills, even if deemed to have been with the agent of the connecting carrier, be treated as conclusive of delivery, so long as this physical movement remained to be made by or for the first carrier. *Missouri P. R. Co.* v. *McFadden,* 154 U. S., 155, 14 Sup. Ct., 990, 38 L. Ed., 944; *Bosworth* v. *Railroad Co.,* 87 Fed., 83, 30 C. C. A., 551; *Railroad* v. *Bickley,* 119 Tenn., 528, 107 S. W., 680, 14 L. R. A. (N. S.), 859, 123 Am. St. Rep., 754, 14 Ann. Cas. 910. To relieve the first carrier from liability and charge the connecting carrier, a complete delivery by the first carrier was requisite; and if anything remained to be done by the first carrier actual delivery was not consummated. The strict responsibility of a common carrier arises, generally, concurrently with the duty of immediate transportation by it when delivery is thus consummate. *Mt Vernon Co.* v. *Railroad,* 92 Ala., 296, 8 South., 687; *Aetna Insurance Co.* v. *Wheeler,* 49 N. Y., 616; 6 Am. & Eng. Ency. Law, 648; 6 Cyc., 486; *Insurance Co.* v. *Railroad,* 8 Baxt., 268; *Pencil Co.* v. *Railroad,* 124 Tenn., 57, 134 S. W., 613, 32 L. R. A. (N. S.), 323.

In decreeing the connecting carrier liable, as having had possession of the cotton when lost, the chancellor erred. Reversed, with decree here in accord with this ruling.