CAMPBELL OIL CO. *v.* BATES *et al.*

*(Nashville,* December Term, 1937.)

Opinion filed March 5, 1938.

LEWIS S. POPE and J. WHITWORTH STOKES, both of Nashville, for appellants.

M. F. VALENTINE and B. Z. TABB, both of Chattanooga, for appellee.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

J. E. Bates, acting Commissioner of Finance and Taxation of the State of Tennessee, issued a statement showing penalties and interest claimed to be due the state from the Campbell Oil Company. This statement and demand of the acting commissioner involved seventy-one tank car shipments of gasoline from the Shell Petroleum Company to the Campbell Oil Company, which arrived in Chattanooga, allegedly, near the end of a number of months between September 29, 1933, and March 30, 1936, involving a total of 656,672 gallons of gasoline. On this total, the tax due the state had been paid, but the acting commissioner asserts that whereas the tax became due on the twentieth of each month following delivery of the gasoline prior to the first of the month, in the seventy-one instances involved, the Campbell Oil Company wrongfully withheld payment of the tax until the twentieth of the next succeeding month, and hence became subject to the penalty of 10 per cent. and interest of 6 per cent. on the penalty as provided by statute, Code 1932, section 1132 *et seq.*, as amended.

Therefore, the commissioner issued a distress warrant to collect from the Campbell Oil Company the sum of $4,827.49, the amount shown by the statement to be due. This demand· was paid under protest by the Campbell Oil Company, and this suit was instituted for the purpose of recovering the amount so paid.

The commissioner demurred to certain portions of the bill, and as to the remainder answered in full. The chancellor sustained the demurrer, and, there remaining only questions of fact with reference to the time of the delivery of the gasoline in question by the carrier to complainant, a reference was ordered to the clerk and master to hear proof and report:

"What, if any penalty and interest is due the State of Tennessee by virtue of the complainant receiving shipments of gasoline, prior to the first of the month during the period of September 29, 1933, to March 30, 1936, and not including said shipments of gasoline in its report of tax liability made to the State on the 20th of the month, following?"

Complainant introduced as witnesses before the master its president and general manager, its shipping clerk, and the yardmaster of the carrier. The state relied solely on the statement of the commissioner. The master reported to the chancellor that complainant owed the state $4,546.67, and that the sum of $280.82 should be returned to it by the state. Complainant excepted to the amount found due by the master, and, on appeal, the chancellor decreed that the whole amount sued for should be returned to complainant. From this decree, the state appealed to this court and assigned errors.

Section 1138 of Williams' 1934 annotation to the Code of 1932 is as follows:

"Statement prepared by commissioner presumed correct.—Said statement, as prepared by the commissioner, shall be deemed *prima facie* correct, and the burden of proof shall be upon the distributor or dealer to prove its incorrectness in any action growing out of matters and things contained therein."

The Campbell Oil Company, a corporation, was a distributor of gasoline in Chattanooga. It has a spur track, a part of which is outside its inclosure. There is room on this spur for five cars within the inclosure and for three without the inclosure. Cars placed by the railroad on this spur track, whether within or without the inclosure, are considered by the railroad company as placed and are reported to the commissioner as delivered. In case of an accumulation of cars on the spur, so that additional cars cannot be placed thereon, they are reported stored on the track where they are temporarily placed, and then rebooked from such storage track to the complainant's track.

Section 1147.12 of the Code is as follows:

"What shall constitute delivery.—The placing of any shipment for unloading shall constitute delivery."

Section 1147.10 of the Code requires the common carriers to report to the Department of Finance and Taxation all deliveries of taxable substances made by them.

The record discloses that after cars are set on complainant's spur track, further switching operations are necessary in order to place the cars at the appropriate outlet for the particular kind of gasoline or kerosene contained in the cars. The complainant had three outlets for unloading, all within its inclosure. Three cars only could be placed or "spotted" for unloading at any one time. The railroad places the cars for unloading

when called upon to do so by complainant, not always immediately, sometimes on the following day.

Delivery of cars to complainant is shown by the railroad when the cars are placed on the complainant's spur track, whether within or without the inclosure, and regardless of any further switching operations necessary to the unloading of the cars.

We think the delivery contemplated by section 1147.12 of the Code is a delivery at the place where the cars can be unloaded. The *prima facie* correctness of the statement of the commissioner is overcome by the testimony of the yardmaster of the railroad to the effect that placement on the spur track of complainant is treated as a delivery to complainant.

The delay complained of by the state, in complainant reporting the cars, is that period of time intervening between the placement of cars on the spur track of complainant and the first of the month. The mere lapse of such time does not, however, establish dereliction on the part of complainant in not reporting such cars on the first of the month. It appears that each car was unloaded the same day it was placed for unloading, unless placed so near the close of the day that it could not be pumped within working hours, then it was unloaded the following working day. Some of the cars were placed on Saturday and could not be unloaded until the following Monday. It was the practice of complainant to have each car placed for unloading upon receipt of the invoice setting forth the amount and nature of the contents of each car.

There is nothing in the record to show that complainant used the loaded cars in question for indefinite storage, or as a distributing tank for local sales, so as to

remove them from interstate commerce prior to the placement of the cars for unloading.

■ A complete delivery of the cars by the carrier, for unloading, was requisite; if anything remained to be done by the carrier, actual delivery was not consummated. *Farnsworth-Evans Co.* v. *Chicago, M. & G. Railroad Co.*, 128 Tenn., 50, 157 S. W., 897.

In *Texas Co.* v. *Brown*, 258 U. S., 466, 42 S. Ct., 375, 379, 66 L. Ed., 721, the court said, *inter alia*:

"In the normal course of the business, as shown by this record, the tank cars are not only the vehicles but the original containers for interstate transportation, as well with respect to products consigned to plaintiff's own stations as to deliveries made direct to other interstate consignees. Ordinarily, unless a loaded car be used for indefinite storage, or as a distributing tank for local sales (nothing of either kind appears in the case) it remains in interstate commerce until unloaded, and the agents of the state may not lawfully subject its contents to the inspection charges until transferred to the storage tank, unless with plaintiff's consent. . . . The mere fact that a loaded tank car has been halted upon a siding, or even upon a private track, for the purpose of unloading, at a station either of plaintiff or of any other interstate consignee, does not, under the course of business here shown, amount to a 'coming to rest within the state,' authorizing state taxation."

■ Under the Tennessee statutes here involved, there is no barrier of taxes or inspection fees directed against goods moving in interstate commerce. The tax imposed is on gasoline received by the consignee. As an administrative feature, it is provided by section 1147.12 of the Code that placement of any shipment for unload-

ing shall constitute delivery. The tax on the contents of the cars so delivered is not payable until the twentieth day of the following month. During this period the cars are either unloaded, or the loaded cars used for indefinite storage, and the tax can legally be exacted.

Here, however, the state has undertaken to exact penalties and interest on the penalties from complainant for its alleged failure to include in its report to the commissioner the cars in question as having been received prior to the first day of the month, when, under the proof, the deliveries shown by the statement of the commissioner reflects deliveries by the carrier on complainant's spur track, and it appears further switching was necessary before the cars were placed for unloading.

We are constrained to overrule the assignments of error and affirm the decree of the chancellor.