Sullivan, J.
Action of contract for the breach of a contract of shipment of goods. Neither declaration nor answer is reported, in full or by extract, and we have no way of knowing what the counts are as to number or content, *397 nor what issues are raised. The report states “The pleadings may be referred to.” The pleadings are in the district court office. To refer to them means a special visit to that place. The law still is that “documents, rulings, statements of fact or of evidence which do not appear to have been made a part” of the report cannot be considered. Barnes v. Springfield, 268 Mass. 497, at 504. If the plaintiffs desired to have the pleadings considered they should have pursued the proper course to have them included in the record. Yoffa v. National Shawmut Bank, 288 Mass. 422, at 426. From the report, however, with the rulings requested and the trial judge’s findings of fact, we can distinguish certain issues of law which were acted upon, and the form of the report clearly demonstrating that it was prepared and allowed to present those issue, we treat the improper practice as no bar to the consideration of those issues. Murray v. Fitchburg Railroad, 130 Mass. 99, at 102. It is not difficult to see, nevertheless, that the defendants may have injured themselves by their omission to report or describe the pleadings.
The facts upon which the issues arise are few and not involved. The plaintiffs shipped goods at Provincetown, November 28, 1939, addressed to one of them at Beverly. There was given to the defendant at that time the information that the addresses would not be at the Beverly address when the goods arrived “for several days” but “that the goods could be delivered to her after she arrived in Beverly. ” The goods arrived at Beverly, November 29,1939, and were taken to the designated house for delivery. As there was no one there to receive them, they were taken back to the Beverly express office of the defendant where they remained until December 12, 1939, when the addressee telephoned *398 that she was at home. They were delivered to her that day and were found to he in a damaged condition. There was a finding for the plaintiff.
From this set of facts, two issues arise.
1. Was proper notice given?
2. Was there prejudicial error in the denial of the defendant’s seventh and eighth rulings?
The first issue is raised by the denial of the third requested ruling which reads that “There is no evidence that the plaintiff made any claim in writing, and there being no proof that the condition precedent has been complied with, the Court must find for the defendant.”
Literally speaking, the ruling requested is incorrect. What the defendant meant was that the evidence of notice is insufficient to warrant a finding for the plaintiffs. It was not a case of no evidence but one of the interpretation and value of what evidence there was.
The goods arrived November 29,19391, on which day they were taken to the addressee’s house. They were not delivered then because the addressee was not there. They were taken back to the express office that day where they remained until December 12,1939, when they were delivered in a damaged condition.
Beginning January 22,1940, there followed a correspondence regarding these goods which is represented by one letter to the defendant, written by the plaintiff’s attorney and two letters written by the local agent of the defendant. The only paper signed by the plaintiff was an instrument preceding this correspondence and dated, December 14,1940, which, however, is headed “Joint Inspection Report” and bears the printed words “This inspection report does not *399 constitute a claim. ’ ’ Other than this report and the attorney’s letter dated January 22, 1940, nothing signed by the plaintiffs, or either of them, or by anyone authorized by them, ever reached the defendant. It is to be noted that Exhibit B, appearing in the report, bears no signature; the report states that it was received by the plaintiff from the defendant, but does not state that it was ever returned to the defendant. We have no way of knowing who offered it at trial.
No question of time enters into this question of the sufficiency of the evidence; the only question is whether any of these things mentioned constituted a claim. In Fish Rubber Co. v. New York, New Haven & Hartford Railroad, 240 Mass. 40, at 44, the court discusses the nature of such a claim, as follows:
“It seems to us that the case comes within the authority of Georgia, Florida & Alabama Railways v. Blish Milling Co., 241 U. S. 190, where a telegram ‘we will make claim against railroad for entire contents of car at invoice price’ was held to be in substance the making of a claim within the meaning of the stipulation.
“There are State decisions to the same effect. In Hyatt Roller Bearing Co. v. Pennsylvania Railroad, 92 N. J. L. 94, where the consignor merely wrote a letter to the carrier reciting the facts and informing it that the goods had not been delivered," it was said‘The liberality of interpretation placed upon that term (viz. claim) by the Federal Supreme Court, and the courts of the sister States, where the question has arisen, evinces that the fundamental reason for the requirement is to enable the carrier to trace the goods within a reasonable period after the delivery, or the failure to deliver, so as to protect itself from resulting loss, upon a subsequent claim for damage. Manifestly the delivery of a notice of the loss, from which no other infer *400 ence is reasonably derivable than that the loss has occurred, and giving the substantial particulars as in the case sub judiee, and which resulted in an investigation, by the carrier, is substantially a claim or a notice of a claim within the reasonable construction of the bill of lading’. In E. H. Emery & Co. v. Wabash Railroad, 183 Iowa, 687, it was held that a notice that the consignee ‘will file a claim,’ though in the future tense, sufficiently complied with this requirement.”
A careful reading of this quotation is convincing that a presentation of such a “claim” under the uniform bills of lading act does not require formal action differing in kind from the notice called for following a breach of warranty under the sales act, G. L. (Ter. Ed.) c. 106, Section 38. Such a notice may be informal, and may be given by an attorney. Johnson v. Kanavos, 296 Mass. 373, at 376, 377. Guthrie v. J. J. Newberry Co., 297 Mass. 245 at 247, 248. “An express claim of damages is not necessary if it is reasonably inferable from the notice that the buyer is asserting a violation of his legal rights.” Nashua River Paper Co. v. Lindsay, 249 Mass. 365, at 370. Guthrie v. J. J. Newberry Co., supra. The notice may be supplemented by a previous oral conversation, not sufficient in itself to constitute a notice but containing detailed information as to what happened, of which the defendant had knowledge, and the two together constituting a good notice. Guthrie v. J. J. Newberry Co., 297 Mass. 245, at 249.
Applying these principles to the case at bar, we have first a Joint Inspection Report, which details the damage. According to the defendant’s contention this was not a sufficient claim. There follows, still within the time prescribed by the contract, a letter written by the plaintiff’s attorney stating that the plaintiffs had “placed a claim” *401 in Ms hands. In common understanding this was a statement that he was their attorney at law appointed by them to enforce their rights. From such a statement it was “reasonably inferable” that the addressee was asserting a violation of her legal rights. “Construing this in a practical way, and in the light of the existing facts as known to the parties, we are of opinion that the defendant was thereby notified in substance that it was charged with liability” for the damage of the goods. Fish Rubber Co. v. New York, New Haven & Hartford Railroad, 240 Mass. 40, at 44.
The letter specifies the date and place of shipment, the date and place of destination, and names the articles damaged. Under the Massachusetts decision already cited, we are of opinion that the letter must be read in the light of the knowledge already possessed by the defendant as the result of the Joint Inspection Report, relating to these goods and already received by it.
In our opinion there was no error in the denial of the third requested ruling.
The defendant requested, also, two other rulings, as follows:
“7. If, after the arrival of the goods at destination, they were offered for delivery, and delivery was not then accepted, the goods thereafter remained in the carrier’s possession only as a warehouseman, and the defendant is not liable, in the absence of proof that the goods were damaged by the defendant’s negligence.
“8. If the goods were in the defendant’s possession part of the time as a carrier, and part of the time as warehouseman, the plaintiff has the burden of proving when the damage, if any, occurred, and in the absence of such proof, is not entitled to recover, unless the damage is proved to have been caused by the defendant’s negligence.”
*402 These requested rulings illustrate a principle limiting the liability of a common carrier as represented by the ordinary rule.
“We are of opinion, * * *, that the duty of the defendants, as common carriers, had ceased on their safe deposit of the plaintiff’s goods in the merchandise depot; and that they were then responsible only as depositories without further charge, and consequently, unless guilty of negligence in the want of ordinary care in the custody of the goods, they are not liable to the plaintiffs for the alleged loss of a part of the goods” Thomas v. Boston & Providence Railroad Corp., 10 Met. 472, at 478.
“This view of the law, applicable to railroad companies, as common carriers of merchandise, affords a plain precise and practical rule of duty, of easy application, well adapted to the security of all persons interested; it determines that they are responsible as common carriers until the goods are removed from the cars and placed on the platform; that if, on account of their arrival in the night, or at any other time, when, by the usage and course of business, the doors of the merchandise depot or warehouse are closed, or for any other cause, they cannot be delivered; or if, for any reason, the consignee is not then ready to receive them; it is the duty of the company to store them and preserve them safely, under the charge of competent and careful servants, ready to be delivered, and actually deliver them when duly called for by parties authorized and entitled to receive them; and for the performance of these duties after the goods are delivered from the cars, the company are liable as warehousemen, or keepers of goods for hire.” Norway Plains Co. v. Boston & Maine Railroad, 1 Gray 263 at 274.
The two cases just cited point out that a common carrier has two separate duties and responsibilities resulting in two> separate and diverse liabilities; As common carrier, when *403 goods are in transit, the carrier is generally an insurer. Unless limited by special contract his liability is complete against everything except acts of God, or of a public enemy, or the default of the owner. Hastings v. Pepper, 11 Pick. 41, at 42. Gage v. Tirrell, 9 Allen 299, at 302.
As the holder or custodian of goods, after transit is completed, the carrier has, in place of the common carrier’s liability, that of a warehouseman, to prove which it is necessary to allege and prove lack of due care. Liability exists only for negligence. Hoadley v. Northern Transportation Co., 115 Mass. 304, at 307, 308. Willett v. Rich, 142 Mass. 356, at 357, 358. Carando v. Springfield Cold Storage Co., Mass. Adv. Sh. (1940) 1545, at 1546.
In the case at bar there was a distinct issue of fact. The defendant had endeavored to deliver the goods at the address to which they were consigned and had failed so to deliver them because the addressee was not there. The goods were taken back to the express office where they remained until the addressee returned. During those days they were not in transit. The liability of the defendant was not then that of a common carrier but that of a warehouseman. It was not necessary to prove negligence to charge a common carrier; it is necessary to show negligence to charge a warehouseman. Judson v. Western Railroad Corporation, 4 Allen 520, at 521, 522. Sessions v. Western Railroad Corporation, 16 Gray 132, at 134, 135. Miller v. Mansfield, 112 Mass. 260, at 263. Stowe v. New York, Boston, & Providence R. R. Co., 113 Mass. 521, at 523, 524. Rice v. Hart, 118 Mass. 201, at 207, 208. Washburn Crosby Co. v. Boston & Maine R. R., 180 Mass. 252, at 255, 256. Bellows v. Worcester Storage Co., 297 Mass. 188, at 192, 193. Rice & Lockwood Lumber Co. v. Boston & Maine R. R., Mass. Adv. Sh. (1941) 111, at 116, 117.
*404 At the time of the shipment the shipper explained that the addressee was not at home and would not be, thus disclosing that the goods could not be delivered immediately upon arrival, making it necessary that they should be held over by the carrier until the addressee claimed them. This information did not affect the defendant’s liability. The delay was not to further the transit of the goods, nor at the defendant’s request, or for its convenience. The shipper paid nothing extra for this accommodation for the addressee’s benefit. It referred to a delay to be incurred after the completion of the carriage and while the defendant’s liability was that of a warehouseman. The shipper could not change the defendant’s liability or increase it by giving such information.
“If the loss occurred during the transportation, that is to say, before there had been a constructive delivery, they were liable for the value of the property absolutely upon their failure to deliver it upon demand; but if it occurred after the leather was deposited in their freight-house, and thus constructively delivered, they were not liable at all, if they used ordinary care for its safety and preservation.” Sessions v. Western Railroad Corporation, 16 Gray 132, at 134.
“If by the usage and course of business, and especially if by express request, the shipment is delayed for further orders as to their destination, or for the convenience of the owner, then, during the time of such delay the liability is that of warehouseman.” Barron v. Eldredge, 100 Mass. 445, at 458.
The foregoing citation applies expressly to a shipment delayed in starting. It must apply logically to a shipment delayed in delivery at the request of the owner.
“After the arrival of the goods at their destination the liability of the company as common carriers ceased, *405 but they became liable for the custody of the goods as warehousemen, and, if they were not removed within a reasonable time, were entitled to compensation. ” Miller v. Mansfield, 100 Mass. 260, at 263.
The trial judge disposed of these requested rulings without comment. It is apparent that he did not consider them applicable. Each of them, however, represents a principle correct in law and applicable to the facts of the case as shown by the evidence. It cannot be assumed that they were denied as in fact inapplicable. Booney v. Porter-Milton Ice Co., 275 Mass. 254, at 257, 258. Rodde v. Nolan, 281 Mass. 493, at 497. Franks v. Franks, 294 Mass. 262, at 268. It was his duty to pass properly upon requested rulings pertinent to the evidence. His failure to deal correctly with the rulings requested was, we think, prejudicial error. The finding for the plaintiff is to be vacated and the case is to stand for a new trial.